J-E02008-15

2015 PA Super 238

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
                                     :       PENNSYLVANIA
               Appellee        :
                                       :
               v.               :
                                     :
JAMES JUMAH ROBINSON,       :
                                     :
            Appellant      :   No. 912 MDA 2014

Appeal from the Sentencing May 23, 2014,
Court of Common Pleas, Berks County,
Criminal Division at No. CP-06-CR-0002523-2013

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., PANELLA, DONOHUE, SHOGAN,
        ALLEN, LAZARUS, MUNDY and STABILE, JJ.

OPINION BY DONOHUE, J.:              **FILED NOVEMBER 19, 2015**

Appellant, James Jumah Robinson ("Robinson"), appeals from the judgment of sentence following his convictions of carrying a firearm without a license, 18 Pa.C.S.A. § 6106(a)(1), and receiving stolen property, 18 Pa.C.S.A. § 3925(a). On appeal, Robinson challenges the sufficiency of the evidence supporting the conviction of receiving stolen property, contending that the Commonwealth did not prove that he possessed the requisite mens rea for the crime. For the reasons that follow, we reverse Robinson's conviction of receiving stolen property, vacate the judgment of sentence, and remand for resentencing on the remaining firearms conviction.

On May 19, 2013, Officers Christopher Dinger and Brett Sneeringer intervened in a domestic dispute between Robinson and Adrianne Myers ("Myers"), with another female (Mercedes Hodge ("Hodge")) also at the

scene. N.T., 2/11/2014, at 15. According to Officer Dinger, Myers was "screaming very loudly and … seemed to be very angry at [Robinson]." *Id.* While Officer Dinger talked with Myers and Hodge, Hodge "quietly informed" the officer that Robinson was currently carrying a firearm in his pocket. *Id.* at 17. Officer Dinger testified that he then approached Robinson and asked if he had any weapons on his person, to which Robinson "just froze where he stood" and "stared at [the officer] stone-faced." *Id.* Officer Dinger conducted a *Terry* pat down search of Robinson's exterior for weapons, at which time he felt a large revolver in Robinson's left front coat pocket. *Id.* at 17-18. Officer Dinger held the revolver tightly through the jacket and asked Robinson if he had a permit to carry the weapon. *Id.* at 18. Robinson again offered no response, remaining "stone-faced" and just stood "without moving or saying anything". *Id.* Officer Sneeringer handcuffed Robinson and Officer Dinger removed a loaded .357 Magnum revolver, manufacturer's serial number 140594, from his left front coat pocket. *Id.* at 18-19. Officer Dinger contacted the county dispatcher, who advised that a search indicated that Robinson did not possess a permit to carry a firearm and that he had a scofflaw warrant for an unpaid harassment ticket. *Id.* at 28.

Officer Dinger identified Jeffery Schoenberger ("Schoenberger") of Lebanon, Pennsylvania, as the probable owner of the handgun. *Id.* at 24. Schoenberger testified that he purchased the weapon in a private sale and

then took it to a local gun shop to complete the transaction. *Id.* at 38. He kept the handgun in his basement, and the last time he could remember seeing it was July 2010. *Id.* at 39. He did not know that it was missing until May 2013 when Officer Dinger contacted him. *Id.* at 39-40. At that time, Schoenberger reported the weapon as missing, but subsequently decided not to pursue charges because he believed that his stepson likely took it and "sold it for money or traded it for drugs." *Id.* at 42. Schoenberger indicated that he did not know Robinson and had not given him the handgun. *Id.* at 40.

After a jury trial on February 11, 2014, Robinson was convicted of the two above-referenced crimes.[1] On the conviction of firearms not to be carried without a license, the trial court sentenced him to a term of incarceration of not less than forty-two months or more than seven years. On the conviction of receiving stolen property, the trial court sentenced Robinson to a consecutive term of incarceration of not less than two years or more than ten years.

---

[1] At the time of arrest, the Commonwealth also charged Robinson with a violation of 18 Pa.C.S.A. § 6105 (persons not to possess, use, manufacture, control, sell or transfer firearms). At trial, however, the Commonwealth presented no evidence relating to this charge and the trial court did not submit it to the jury for consideration. N.T., 2/11/2014, at 66-69. In connection with its recordation of the jury's guilty verdicts, the trial court indicated that it granted a motion for judgment of acquittal for the 6105 charge.

On appeal, Robinson challenged only the sufficiency of the evidence supporting his conviction of receiving stolen property. In a memorandum decision issued on December 23, 2014, a panel of this Court reversed the conviction of receiving stolen property and remanded for resentencing. This Court subsequently granted en banc review for further consideration of the sufficiency of the evidence for the disputed conviction. Robinson contends that the Commonwealth presented no evidence at trial to establish that he knew, or had reason to know, that the firearm in his possession was stolen. The Commonwealth disagrees, arguing that it introduced circumstantial evidence that, when viewed in the light most favorable to the verdict winner, permitted the jury to infer that Robinson possessed the requisite mens rea for a conviction of receiving stolen property.

Our standard of review for a challenge to the sufficiency of the evidence is de novo, but our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Rushing*, 99 A.3d 416, 420–21 (Pa. 2014). Evidence is sufficient if it can support every element of the crime charged beyond a reasonable doubt. *Commonwealth v. Forrey*, 108 A.3d 895, 897 (Pa. Super. 2015); *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014). The trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of

the evidence. **_Commonwealth v. Watkins_**, 843 A.2d 1203, 1211 (Pa. 2003).

The crime of receiving stolen property is defined by statute as follows:

§ 3925. Receiving stolen property

**(a) Offense defined.**--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S.A. § 3925(a). Based upon this definition, this Court has identified the elements of the crime, as relevant here, to be: (1) intentionally acquiring possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently. **_Commonwealth v. Nero_**, 58 A.3d 802, 807 (Pa. Super. 2012) (quoting **_Commonwealth v. Young_**, 35 A.3d 54, 63 (Pa. Super. 2011), _appeal denied_, 48 A.3d 1249 (Pa. 2012)), _appeal denied_, 72 A.2d 602 (Pa. 2013).

Robinson contests the sufficiency of the evidence only with respect to the second element of the crime, sometimes referred to as "guilty knowledge" of the crime. **_See Commonwealth v. Matthews_**, 632 A.2d 570, 572 (Pa. Super. 1993). This Court has commented on the basic requirement for satisfaction of this second element as follows:

Importantly, the Legislature expressly defined the required mental state as "knowing" or

- 5 -

"believing." Because the Legislature excluded mental states such as recklessness, negligence, or naïveté about the stolen status of the property, those mental states are insufficient. *Commonwealth v. Dunlap*, 505 A.2d 255, 257 (Pa. Super. 1985); *see also Commonwealth v. Ostrosky*, 909 A.2d 1224, 1230 n. 7 (Pa. 2006) (express inclusion of certain statutory terms implies the exclusion of those that are not mentioned); *compare* 18 Pa.C.S.A. § 302(c) (where the Legislature does not define the relevant mental state, a finding of recklessness is sufficient). This reasoning is consistent with the common recognition that penal statutes are to be strictly construed. *Commonwealth v. Jarowecki*, 985 A.2d 955, 959 (Pa. 2009), citing 1 Pa.C.S.A. § 1928(b)(1). Thus, courts may not hold that a less culpable mental state satisfies a criminal statute where the statute demands proof of the more culpable mental state. *See Dunlap*; *compare* 18 Pa.C.S.A. 302(d) (generally, if the Commonwealth proves a more culpable mental state, then the less culpable mental state is satisfied).

*Commonwealth v. Newton*, 994 A.2d 1127, 1131 (Pa. Super. 2010), *appeal denied*, 8 A.3d 898 (Pa. 2010).

Accordingly, the Commonwealth had the burden to establish either that Robinson knew the firearm in question was stolen, or believed that it had probably been stolen. A person "knows" that goods are stolen if he is "aware" of that fact. *Id.* (citing 18 Pa.C.S.A. § 302(b)(2)(i)). In this case, as in most cases, the Commonwealth acknowledges that there is no direct proof that Robinson knew for a fact that the handgun was stolen. Commonwealth's Substituted Brief at 9-10. Instead, the Commonwealth contends that it introduced sufficient evidence to prove that Robinson

believed the firearm was probably stolen. *Id.* In this regard, the Commonwealth correctly notes that the guilty knowledge required here (like all culpable mental states) may be inferred from circumstantial evidence. *Id.* at 8; *Commonwealth v. Pruitt*, 951 A.2d 307, 314 (Pa. 2008), *cert. denied*, 556 U.S. 1131 (2009).

The viability of inferences of guilty knowledge in connection with the crime of receiving stolen property has a long history. In early cases, this Court sanctioned an evidentiary presumption that a defendant's unexplained possession of recently stolen property was sufficient proof to support a conviction of receiving stolen property. *See, e.g.*, *Commonwealth v. Pittman*, 118 A.2d 214 (Pa. Super. 1955); *Commonwealth v. Kaufman*, 116 A.2d 316 (Pa. Super. 1955). In two cases, however, the United States Supreme Court ruled that a criminal presumption is unconstitutional unless the fact presumed "more likely than not" flows from the facts proven at trial. *Leary v. United States*, 395 U.S. 6, 36 (1969); *Turner v. United States*, 396 U.S. 398, 405 (1970).

In response to *Leary* and *Turner*, our Supreme Court, in *Commonwealth v. Owens*, 271 A.2d 230 (Pa. 1970), ruled that the old evidentiary presumption for recently stolen property violated due process. *Id.* at 233. Moreover, in *Owens* the Supreme Court emphasized that in the absence of proof by the Commonwealth that the property had been stolen **recently**, no evidentiary basis had been established to support a conviction

for receiving stolen property, with or without an explanation from the appellant. The handgun in **Owens** had been stolen approximately seven weeks prior to the appellant's arrest, and without any other evidence of guilty knowledge from the Commonwealth, the conviction could not stand:

> We reiterate that there is nothing whatever in the record touching upon how appellant originally came into possession of the stolen pistol, and the possibilities of innocent acquisition seem myriad: a gift, payment for services rendered, payment of a debt, purchase from a seemingly reputable dealer in used guns.

*Id.* According to the Supreme Court, the seven week delay between the theft of the handgun and the arrest provided ample time for any number of transfers in "seemingly innocent circumstances," and thus, the Commonwealth had not provided the jury with any evidentiary basis to infer that the appellant knew or had reason to know that the handgun was stolen. *Id.*

Two years later, in **Commonwealth v. Shaffer**, 288 A.2d 727 (Pa. 1972), our Supreme Court again revisited this issue, ruling that while (per **Owens**) a jury may not **presume** guilty knowledge based upon "recency plus lack of explanation," a jury can **infer** guilty knowledge based upon the same evidentiary showing.[2] *Id.* at 736. In contrast to **Owens**, in **Shaffer**

---

[2] In **Barnes v. United States**, 412 U.S. 837 (1973), the United States Supreme Court agreed, concluding in a case involving the unexplained possession of recently stolen treasury checks, "common sense and experience tell us that petitioner must have known or been aware of the

the Commonwealth's evidence established the recency of the theft, as the appellant was found in possession of jewelry stolen just one day before his arrest. This evidence of recency permitted the jury to infer that the appellant knew the jewelry was stolen, as this factual predicate "competently established that the possessor of the recently stolen property **could be the thief**." *Id.* (emphasis added). Unlike in **Owens**, where the lapse of time precluded any inference of guilty knowledge, the proof of recency in **Shaffer** provided the jury with an evidentiary basis to infer guilty knowledge, with or without any attempt by Shaffer to explain his possession:

> The inference in the instant case merely accords the evidence its natural probative force, the inference of guilt is simply a result that the triers of fact are permitted to reach based on the evidence. We stress that the triers of fact are permitted to reach the inference, but they may also reject it, the result is within the jury's discretion, and they are in no way compelled to reach any conclusion. In the instant case, **the trial judge properly stressed the fact that the possession must be recent**, he pointed out that appellant did not have the burden of explaining possession, he more than adequately charged the jury on the presumption of innocence, he informed the jury that the Commonwealth had the burden of proving every element of the crime beyond a reasonable doubt, he informed the jury of

---

high probability that the checks were stolen." **Id.** at 846. The Supreme Court rejected petitioner's contention that allowing the unexplained nature of the possession to be used against him violated his privilege against self-incrimination, indicating that while it could increase the pressure on him to testify, "the mere massing of evidence against a defendant" does not violate the privilege. **Id.**

the significance of Shaffer's defense and stated that the jury could not draw anything from the fact that certain defendants did not testify in their own behalf, and lastly he stated the jury could infer guilt from the possession, thereby making it clear that it was within their discretion.

*Id.* (emphasis added).

Finally, in **Commonwealth v. Williams**, 362 A.2d 244 (Pa. 1976),[3] our Supreme Court again affirmed the "recency plus lack of explanation" inference for recently stolen property, holding that "a permissible inference of guilty knowledge may be drawn from the unexplained possession of recently stolen goods without infringing on an accused's right of due process or his right against self-incrimination." **Id.** at 248-49 (footnotes omitted). **Williams** involved an appellant's unexplained possession of a stolen car just twelve days after its theft. **Id.** at 250. In reversing the decision of this Court and reinstating the judgment of the trial court on the conviction of receiving stolen property, the Supreme Court in **Williams** indicated that "[c]ircumstantial evidence from which guilty knowledge can be inferred is

_____

[3] In a subsequent case, **Commonwealth v. Doman**, 416 A.2d 507 (Pa. 1980), the Supreme Court referred to **Williams** as a plurality decision. **Id.** at 509. A review of the **Williams** opinion, however, suggests that it was in fact a 6-1 majority decision, with four justices joining in the majority decision and two concurring in the result. Justice Eagan authored the majority decision with two justices (Jones, C.J. and O'Brien, J.) joining. Justice Pomeroy filed a concurring opinion in which he amplified on the constitutional history of the evidentiary presumption/inference at issue. In his concurring opinion, Justice Pomeroy agreed with both the majority's decision to reinstate the judgment of the trial court and Justice Eagan's reasons for doing so. **Williams**, 362 A.2d at 250-51 (Pomeroy, J., concurring).

sufficient to sustain a conviction if the underlying circumstantial evidence is sufficiently strong to support the inference beyond a reasonable doubt." *Id.* at 248.

In assessing the strength of the inference, the Supreme Court indicated that mere possession of stolen property, without more, is not sufficient circumstantial evidence to support an inference of guilty knowledge. *Id.* at 248 n.7 ("[M]ere possession is insufficient to establish or permit an inference of guilty knowledge…."). Proof that the goods were **recently** stolen, however, may provide the jury with sufficient circumstantial evidence to support an inference of guilty knowledge, since the "circumstances of possession as presented by the Commonwealth" (the recency of the theft) suggest "an explanation for the possession" (that the accused was the thief, per *Shaffer*). *Id.* at 248. In other words, a jury may infer guilty knowledge from evidence of recency, which in turn may require the appellant to offer an alternative explanation for his possession of the stolen item. It is the Commonwealth's circumstantial evidence of guilty knowledge (recency) that compels the need for an explanation, since in the absence of an explanation the jury may infer guilty knowledge beyond a reasonable doubt based upon the Commonwealth's evidence. Even if the accused offers an explanation, the jury may nevertheless find it unsatisfactory and reach a finding of guilty knowledge based upon the recency of the theft. *Id.*

Subsequent to **Williams**, this Court has had many opportunities to apply its teachings, including that the mere possession of stolen property is not sufficient to prove guilty knowledge. **See, e.g.**, **Commonwealth v. Foreman**, 797 A.2d 1005, 1012 (Pa. Super. 2002) ("[T]he mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence, which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the property was stolen."); **Commonwealth v. Matthews**, 632 A.2d 570, 571 (Pa. Super. 1993) ("[T]here must be additional evidence [beyond mere possession], circumstantial or direct, which would indicate that the defendant knew or had reason to know that the property was stolen."); **Commonwealth v. Mayger**, 395 A.2d 933, 935 (Pa. Super. 1978) ("All that was proved was that appellant had in his possession a set of keys that were part of an 'extensive list' of things stolen from a house in Levittown."); **Commonwealth v. Stover**, 436 A.2d 232, 233-34 (Pa. Super. 1981) (possession thirty-seven days after the theft of an automobile was not recent, and no other evidence linked the defendant to the theft); **Commonwealth v. Caesar**, 369 A.2d 341, 344 (Pa. Super. 1976) (guilty knowledge would be "conjectural at best" where the theft of an automobile was four weeks prior and the defendant was in jail at that time).

On the other hand, when the Commonwealth (per **Williams**) establishes the recency of the theft, we have upheld convictions for receiving

stolen property. *See, e.g.*, ***Commonwealth v. Hogan***, 468 A.2d 493, 498 (Pa. Super. 1983) (en banc) ("We cannot say as a matter of law a period of four weeks was so great as to render impermissible the inference of guilty knowledge …"); ***Commonwealth v. Walters***, 378 A.2d 1232, 1236-37 (Pa. Super. 1977) (guilty knowledge properly inferred by unexplained possession of stolen furniture six days after theft, where the defendant fled to avoid police); ***but see Matthews***, 632 A.2d at 572 (judgment of sentence vacated where the defendant, who was in possession of an automobile stolen three days prior, provided a satisfactory explanation, namely that he had rented it in exchange for two rocks of crack cocaine).

Evidence of the recency of the theft is not the only basis for an inference of guilty knowledge. ***See Commonwealth v. Stevenson***, 363 A.2d 1144, 1145 (Pa. Super. 1976) ("[C]riminal intent or guilty knowledge may be inferred where facts and evidence are such as to show that element of the crime."). Circumstantial evidence of guilty knowledge may include, inter alia, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime. ***See, e.g.***, ***Commonwealth v. Marrero***, 914 A.2d 870, 873 (Pa. Super. 2006) (listing

factors); **Foreman**, 797 A.2d at 1009 (the owner of a motorcycle repair shop in possession of motorcycles, engines, and other parts, where the serial numbers on several of the motorcycle engines had been visibly altered); **Commonwealth v. Grabowski**, 452 A.2d 827, 830 (Pa. Super. 1982) (attempts to sell a stolen car); **Commonwealth v. Worrell**, 419 A.2d 1199, 1201-02 (Pa. Super. 1980) (VIN numbers on frame of vehicle and engine mutilated); **Commonwealth v. Brabham**, 407 A.2d 424, 426-27 (Pa. Super. 1979) (flight from law enforcement at the time of arrest); **Commonwealth v. Phillips**, 392 A.2d 708, 710 (Pa. Super. 1978) (appellant in possession of repainted motorcycle in the same city where it had been stolen, with the serial number marred).

In this case, the Commonwealth presented no evidence that would support an inference of guilty knowledge. The **Williams** "recency plus lack of explanation" inference does not apply, as the Commonwealth introduced no evidence to satisfy the recency requirement.[4] Schoenberger testified only that he had last seen the handgun in July 2010, and did not know it was missing until May 2013 when he was contacted by Officer Dinger after

---

[4] While the Supreme Court in **Williams** indicated that issues regarding recency are "normally questions of fact for the trier of fact," **Williams**, 362 A.2d at 249, such is not the case here, as the lack of evidence regarding a definitive date of the theft provided the jury with no basis on which to make any findings of fact regarding recency (other than speculation).

Robinson's arrest.[5]  N.T., 2/11/2014, at 39-40.  Likewise, none of the other recognized indicia of knowledge of the stolen nature of the property is present.   The handgun in Robinson's possession was located in an unremarkable location (his coat pocket), and it had not been altered in any way to conceal its stolen status, as the manufacturer's serial number remained plainly visible.   Robinson's conduct at the time of arrest likewise provided no indicia of guilty knowledge, as he merely stared "stone-faced" in response to Officer Dinger's inquiries, and he did not offer any false explanation for his possession of the handgun or make any effort to flee apprehension.    In sum, the Commonwealth introduced no evidence whatsoever at trial regarding how, when, or where Robinson acquired the handgun, or from whom.   Instead, the Commonwealth proved only that Robinson possessed stolen property, which, as indicated, by itself is not sufficient to prove guilty knowledge.  *See, e.g.*, *Williams*, 362 A.2d at 248 n.7; *Foreman*, 797 A.2d at 1012.

_____

[5]   Schoenberger speculated that his stepson may have taken the weapon between July 2011 and October 2011, when Schoenberger was driving a truck.  N.T., 2/11/2014, at 40.  He offered no reasons, however, as to why he believed the handgun may have been stolen during this period, as opposed to any other time between July 2010 and May 2013.  In any event, if his stepson did steal the handgun in 2011, this still leaves nearly two years before it was found in Robinson's possession, which plainly does not satisfy the recency requirement for the *Williams* inference.  *See, e.g.*, *Commonwealth v. McFarland*, 308 A.2d 592, 593 n.1 (Pa. 1973) (jury instruction on "recency plus lack of explanation" was improper where the arrest occurred eleven months after the theft).

Because the Commonwealth did not establish the recency of the theft and provided no other circumstantial evidence of guilty knowledge, Robinson had no obligation to offer any explanation for his possession of the handgun. As our review of **Shaffer** and **Williams** makes clear, any necessary compulsion for a defendant to provide an explanation must be in response to the Commonwealth's introduction of sufficient circumstantial evidence of guilt to provide the jury with an inference beyond a reasonable doubt. In those cases, once the Commonwealth proved the recency of the thefts, the jury was free to infer the defendant's guilt (that he could have been the thief) unless the defendant could offer a satisfactory alternative explanation for his possession of the stolen goods. **Shaffer**, 288 A.2d at 736; **Williams**, 362 A.2d at 248. In the present case, in contrast, because the Commonwealth introduced no circumstantial evidence of guilty knowledge, nothing compelled Robinson to offer evidence to explain his possession of the handgun.

Nevertheless, the trial court ruled that Robinson's failure to prove that he had "registered" his ownership of the handgun was evidence that he knew that it was probably stolen. Trial Court Opinion, 7/16/2014, at 5. According to the trial court, Robinson's "failure to obtain lawful ownership of a firearm found in his possession indicates that [he] knew or had reason to know that the firearm he possessed was likely taken from another individual who had rightful ownership of the firearm." **Id.** In particular, the trial court

found that "[t]o own a firearm in Pennsylvania, an individual must register ownership with the State," and that since "no paperwork was provided at trial to show [Robinson's] lawful ownership of any firearm, [Robinson] likely received the firearm through improper means." ***Id.***

The trial court's analysis is in error, in substantial part because it reflects a basic misunderstanding of Pennsylvania law with respect to the sale of firearms and the absence of any paperwork to demonstrate firearm ownership. Specifically, no requirement exists under Pennsylvania law to obtain a license, permit, or other permission to own a firearm, and the Commonwealth does not maintain a registry of ownership of firearms. Likewise, no state agency issues any documentation evidencing the ownership of a firearm. Ownership of a firearm in Pennsylvania bears little similarity to ownership of, for example, an automobile.

The trial court's confusion may have resulted from Schoenberger's mistaken testimony that he was the "registered owner" of the handgun because he had gone through a "registration process" at the local gun shop when he purchased it.[6] N.T., 2/11/2014, at 43. As indicated, however, no

---

[6] Evidence of Schoenberger's compliance with section 6111, without more, was not evidence of Robinson's noncompliance. The Commonwealth did not charge Robinson with a violation of section 6111. At most, Schoenberger's testimony regarding his compliance allowed the jury to speculate as to whether Robinson also complied, and fell far short of the proof necessary for the Commonwealth to satisfy its evidentiary burden for the guilty knowledge element of the crime. ***See, e.g.***, ***Barnes***, 412 U.S. at 845 n.9 ("But the burden of proving beyond a reasonable doubt that the defendant did have

"registration process" exists in Pennsylvania. Instead, the only requirement in Pennsylvania before purchasing/transferring a firearm is to obtain an instant background check by the Pennsylvania State Police ("PSP").[7] 18 Pa.C.S.A. § 6111. As with Schoenberger's purchase, private sales/transfers must be completed with an instant background check performed at the place of business of a licensed importer, manufacturer, or dealer, or at a county sheriff's office. 18 Pa.C.S.A. § 6111(c). In connection with the background checks, the PSP maintains a database of transactions.[8] The failure to obtain an instant background check may subject the seller/transferor to criminal liability. A buyer/transferee may be subject to criminal liability under section

knowledge that the property was stolen, an essential element of the crime, remains on the Government.").

[7] Pursuant to subsections 6111(b)(3)-(5), a licensed importer, licensed manufacturer, or licensed dealer must, prior to selling or transferring a firearm, contact the PSP for a background check (criminal history, juvenile delinquency, and mental health records) on the purchaser/transferee, obtain an approval number from the PSP, and issue a receipt with that approval number on it to the purchaser/transferee. 18 Pa.C.S.A. § 6111(b)(3)-(5).

[8] Pursuant to subsection 6111(b)(1), sales or transfers of handguns require the seller/transferor to submit to the PSP a one-page application/record of sale based upon information obtained from the buyer/transferee. 18 Pa.C.S.A. § 6111(b)(1). The seller/transferor must provide the buyer/transferee with a copy of the application/record of sale and maintain a copy of the same in its records for twenty years. *Id.* There is no requirement that the buyer/transferee retain his/her copy of the document.

6111 only for making false statements or providing false identification to the seller/transferor.[9]  18 Pa.C.S.A. § 6111(g).

Importantly, an instant background check does **not** constitute registration of gun ownership or evidence of gun ownership.  As our Supreme Court has emphasized, section 6111 does not require background checks at all for handguns (1) owned in Pennsylvania but obtained while outside of the state, or (2) procured through transfers between spouses, parents and children, or grandparents and grandchildren.  ***Allegheny Cnty. Sportsmen's League v. Rendell***, 860 A.2d 10, 21-22 (Pa. 2004); 18 Pa.C.S.A. § 6111(c).  As a result, the PSP's database (through which Officer Dinger identified Schoenberger) is not a "registry of ownership" and is not a "survey of existing [handgun] ownership."

> **It is undisputed that the database at issue is not a registry of ownership**, but rather, merely reflects the applications/records of sale for handgun purchases that occur in Pennsylvania.  The database does not maintain a record of all firearms owned by Pennsylvanians, which would include long guns, or firearms that are owned by Pennsylvanians, but not purchased in the Commonwealth.  Additionally, the database of handgun sales does not include handguns that are transferred between spouses, parents and children, and grandparents and

---

[9]  Subsection 6111(g) sets forth various criminal penalties for a seller/transferor who fails to comply with these obligations.  18 Pa.C.S.A. § 6111(g)(1)-(3), (5)-(6).  A buyer/transferee's criminal liability under section 6111 is limited to knowingly or intentionally making false statements or providing false identification in connection with the above-described process.  18 Pa.C.S.A. § 6111(g)(4).

> grandchildren. ***See*** 18 Pa.C.S. § 6111(c). **Nor is the database a survey of existing ownership.**

***Id.*** (emphasis added). Instead, the database "merely contains information regarding the sales of handguns in the Commonwealth." ***Id.***

For these reasons, the trial court's contention that Robinson failed to "register his ownership" of the handgun at issue is mistaken, as there is no process or method in this Commonwealth for registering the ownership status of a handgun. To the contrary, in this case the most that could be said is that no instant background check was performed in connection with Robinson's acquisition (by sale or transfer) of the weapon. Even this conclusion is not supported by the certified record, however, as the Commonwealth introduced no evidence that an instant background check was required at the time of Robinson's acquisition (i.e., that he obtained it while in Pennsylvania, and not from a spouse, parent, child, grandparent or grandchild). Even if the evidence of record did demonstrate that an instant background check should have been performed (which it does not), compliance would be the responsibility of the individual who sold or transferred the handgun to Robinson, rather than the responsibility of Robinson (as the purchaser/transferee). The noncompliant seller/transferor would face possible criminal penalties, not Robinson. For these reasons, no evidentiary basis exists on this record to support the trial court's assertion that the jury could properly infer, beyond a reasonable doubt, that Robinson

J-E02008-15

must have obtained the handgun by "improper means." Trial Court Opinion, 7/16/2014, at 5.

The Commonwealth alternatively contends, citing to section 6111, that "the sale of handguns are highly regulated and they cannot easily be obtained from legitimate dealers,"[10] and "the factfinder was told that the gun was stolen at some undetermined point [and thus,] it would have been difficult for the firearm to be assimilated back into legal trade channels." Commonwealth's Substituted Brief at 10. This argument is misleading at best, since Schoenberger did not report the handgun as stolen until **after** Robinson's arrest, when he was contacted by Officer Dinger regarding its whereabouts. N.T., 2/11/2014, at 39-42. As such, the Commonwealth offered no evidence that the handgun at issue could not have been assimilated back into legal trade channels.

Finally, the Commonwealth suggests that Robinson's lack of a license to carry the weapon was circumstantial evidence of his guilty knowledge. Commonwealth's Substituted Brief at 10. The Commonwealth does not offer

---

[10]   On this point, the Commonwealth cites to this Court's decision in **Commonwealth v. Parker**, 847 A.2d 745 (Pa. Super. 2004). In significant contrast to the present case, in **Parker** the Commonwealth introduced evidence that the appellant was a convicted felon. **Id.** at 751. As such, the appellant knew that it was illegal for him to obtain a handgun and that a criminal background check thus would have prevented a purchase from a legitimate dealer in legal trade channels. **Id.** Also in **Parker**, unlike in this case, the handgun had been stolen the previous month near where the police arrested the appellant, and the appellant made incriminating statements both to the gun's owner and to federal agents. **Id.** at 751-52.

- 21 -

any supporting argument for this contention, and we fail to grasp the connection between ownership of a particular handgun and the lack of a license to carry. Licenses to carry a handgun are issued to individuals pursuant to 18 Pa.C.S.A. § 6109 based upon the applicant's qualifications (including, inter alia, his/her character, criminal history, juvenile delinquency, or prior drug or alcohol abuse). 18 Pa.C.S.A. § 6109(e). Ownership of a handgun is not a prerequisite to the issuance of a license to carry, and the license is not issued for a particular handgun. Conversely, a person may own a handgun without obtaining a license to carry, as was true of Schoenberger in this case. N.T., 2/11/2014, at 44. Robinson was charged, convicted, and sentenced for the crime of carrying a firearm without a license, 18 Pa.C.S.A. § 6106(a)(1), and he does not contest that conviction in this appeal. Without more, however, this conviction does not implicate Robinson for the separate crime of receiving stolen property.

In conclusion, the Commonwealth proved only that Robinson possessed a stolen handgun. The Commonwealth did not introduce any evidence that would support a jury inference, beyond a reasonable doubt, that Robinson knew or had reason to believe that the handgun was stolen. In the absence of any evidence to support the second element of the crime of receiving stolen property, the conviction must be reversed.

Judgment of sentence vacated on the conviction of receiving stolen property, 18 Pa.C.S.A. § 3925(a). Case remanded for resentencing on the

conviction of carrying a firearm without a license, 18 Pa.C.S.A. § 6106(a)(1).

Jurisdiction relinquished.

P.J.E. Bender and Judges Panella, Shogan, Lazarus and Stabile join the Opinion.

P.J. Gantman and Judge Mundy concur in the result.

Judge Allen did not participate.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2015