J-S12007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| RAYHEEM RATLIFFE | |
| Appellant | No. 531 MDA 2016 |

Appeal from the Judgment of Sentence March 28, 2016
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0004932-2013

BEFORE:  PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 22, 2017**

Appellant, Rayheem Ratliffe, appeals from the judgment of sentence entered after a jury convicted him of receiving stolen property. Ratliffe argues that the evidence at trial was insufficient to support his conviction, as he believes it could not sustain an inference that he was aware that the tools in his possession had been stolen. After careful review, we conclude that the Commonwealth's evidence was sufficient to allow the jury to infer that Ratliffe was aware that he possessed stolen property, and therefore affirm.

On November 4, 2013, the Commonwealth filed an information charging Ratliffe with receiving stolen property, based upon his possession of tools that had been stolen from a local worksite. At the jury trial on this charge, the Commonwealth presented the following evidence.

Earlier that fall, Officer Brett Sneeringer of the Reading Police Department responded to a call for a disturbance in an apartment building in Reading. *See* N.T., Jury Trial, 2/18/16, at 106. Upon arriving at the building, at approximately 6 a.m., Officer Sneeringer could hear a woman screaming through the open front door. *See id*.

Officer Sneeringer proceeded to the second floor, where he encountered Stephen Bergman, who was standing in the doorway to his own apartment. *See id*. Bergman pointed to the next door down the hallway, which was broken and open. *See id*., at 106-107.

Officer Sneeringer proceeded to enter the apartment, and saw a woman, Carmen Gonzalez, inside. *See id*., at 107. As he approached Gonzalez, he observed "a tall, skinny black male standing on the fire escape directly outside the window … to my right. As I turned to face him, the male ran down the steps and into a yard." *Id*. After reaching the yard, the man continued to flee and jumped the fence. *See id*. Officer Sneeringer was not able to see the man's face, and officers were unable to apprehend him. *See id*.[1]

After securing the area, Officer Sneeringer returned to the apartment to check on Gonzalez. *See id*., at 108. After taking a quick statement from

---

[1] The Commonwealth does not appear to have made any effort at trial to argue that this man was Ratliffe.

Gonzalez, Officer Sneeringer spoke to Bergman, who informed him that there were stolen power tools in the apartment with Gonzalez. *See id*.

When he returned to Gonzalez's apartment, she led him to a closet in the bedroom. *See id*., at 109. Inside the closet, Officer Sneeringer discovered "a stack of the hard plastic boxes that are similar to what you'd see construction power tools and that in. … [I] could clearly see some of the boxes were marked Burkey." *Id*.

Gonzalez subsequently consented to a search of her apartment. *See id*. The power tools were photographed and logged. *See id*. Officer Sneeringer was aware of a recent burglary of Burkey Construction tools from a jobsite, and therefore contacted Burkey to see if they could identify the tools. *See id*., at 105-106, 113.

Larry Concordia, a supervisor for Burkey Construction, testified that tools had been stolen from a Burkey jobsite in a local library. *See id*., at 45. When he was shown the tools recovered from the closet, he positively identified them as the tools stolen from Burkey's jobsite. *See id*., at 46. He noted that the recovered tools, like all of Burkey's tools, were marked with orange paint, and are engraved or branded with an identifier. *See id*.

While searching the rest of the apartment, police discovered Ratliffe's driver's license. *See id*., at 111. The license was found inside the front pocket of a sweatshirt lying on a heater next to the fire escape. *See id*., at 112. Gonzalez testified that Ratliffe was her boyfriend on the night of the

disturbance. *See id*., at 99. Furthermore, Ratliffe was the father of her child. *See id*. However, Gonzalez could not recall if Ratliffe was living with her at the time. *See id*.

Bergman testified that Ratliffe lived with Gonzalez at the time of the disturbance. *See id*., at 71-72. Bergman would visit and spend time with Ratliffe in Gonzalez's apartment. *See id*., at 72. Other than Ratliffe and Gonzalez's child, no one else lived in the apartment. *See id*., at 73.

Ratliffe informed Bergman that the tools were stolen. *See id*., at 74. Ratliffe wanted Bergman to sell the tools. *See id*. After the police arrested Ratliffe, he confronted Bergman about his potential testimony. *See id*., at 76-77. "He was … asking me if I was testifying again, that I did not have to testify, it's been a few years, that I don't have to remember things." *Id*., at 77.

On appeal, Ratliffe challenges the sufficiency of the evidence supporting his conviction. Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa. Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial

evidence." **Commonwealth v. Bruce**, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Id**. (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. **See id**. "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." **Commonwealth v. Kinney**, 863 A.2d 581, 584 (Pa. Super. 2004) (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Bruce**, 916 A.2d at 661 (citation omitted).

The jury convicted Ratliffe of receiving stolen property. A person is guilty of receiving stolen property if "he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a). The crime has three elements: (1) intentionally taking possession of another person's movable property; (2) knowing or believing that it has been stolen; and (3) an intent to deprive the rightful owner of her property permanently. **See Commonwealth v. Robinson**, 128 A.3d 261, 265 (Pa. Super. 2015) (*en banc*).

Ratliffe contends that there was insufficient evidence at trial to support a finding that he knew the tools had been stolen. Regarding this element, this Court has provided the following analysis:

> Importantly, the Legislature expressly defined the required mental state as "knowing" or "believing." Because the Legislature excluded mental states such as recklessness, negligence, or naiveté about the stolen status of the property, those mental states are insufficient. This reasoning is consistent with the common recognitions that penal statutes are to be strictly construed. Thus, courts may not hold that a less culpable mental state satisfies a criminal statute where the statute demands proof of the more culpable mental state.
>
> Accordingly, the Commonwealth had the burden to establish either that [the defendant] knew [the property] in question was stolen, or believed that it had probably been stolen. A person "knows" that goods are stolen if he is "aware" of that fact.

*Id*. (citations omitted).

Mere possession of stolen property is not sufficient, by itself, to justify an inference that the defendant knew the property was stolen. *See id*., at 267. Other circumstantial evidence that can support an inference of knowledge or belief that property is stolen includes the recency of the theft, the place or manner of the defendant's possession of the property, modifications to the property indicative of unlawful possession, conduct or statements made by the defendant, false accounts for possession of the property, the fact that the theft occurred near where the defendant has possession of the property, or an excessively discounted price for the property. *See id*., at 268.

Ratliffe argues that the Commonwealth failed to present evidence of how recently the tools had been stolen, or that the tools had been altered in any manner, or that the tools were in held in a place or manner indicative of theft. Furthermore, he contends that there was no evidence that he fled from the police or that he had offered a false explanation for his possession of the tools.

We agree that the Commonwealth did not present evidence of these circumstances. However, the Commonwealth did present evidence that the tools had been stolen from a nearby jobsite. Furthermore, the Commonwealth presented evidence that the tools were distinctively marked in a manner that should lead a person to believe that they belonged to Burkey Construction. Finally, and most importantly, the Commonwealth presented Bergman's testimony that Ratliffe had informed him that the tools were stolen, and that he wanted Bergman to sell them for him. These circumstances were more than sufficient to allow the jury to infer that Ratliffe was aware that the tools were stolen. Ratliffe's argument merits no relief.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/22/2017