J-S05026-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
                                    :

              v.                         :
                                    :
                                    :

RORY DAVID NERO, JR.          :
                                    :

          Appellant         :       No. 1008 WDA 2017

Appeal from the Judgment of Sentence April 21, 2017
In the Court of Common Pleas of Erie County
Criminal Division at No(s):  CP-25-CR-0003536-2016

BEFORE:   OLSON, J., OTT, J., and STRASSBURGER*, J.

MEMORANDUM BY OTT, J.:                    FILED APRIL 10, 2018

Rory David Nero, Jr., appeals from the judgment of sentence imposed April 21, 2017, in the Erie County Court of Common Pleas. The trial court sentenced Nero to a term of 12 months' probation, following his jury conviction of one count of receiving stolen property ("RSP"). See 18 Pa.C.S. § 3925(a). On appeal, he challenges the sufficiency of the evidence supporting his conviction. For the reasons below, we affirm.

The convoluted facts underlying Nero's conviction are summarized by the trial court as follows:

> Shortly after midnight on June 26, 2016, Mark Libby and his boss, Appellant Rory Nero, went to Cassie Hendershot's house and found her dead. Cassie Hendershot was Mark Libby's girlfriend.
>
> Mark Libby testified he was driving [Nero] home when he stopped at his girlfriend's house. [Nero] was originally waiting in the truck when Libby found Hendershot dead inside her room. After Libby exited the house, he asked [Nero] to come in to help determine she was not alive. On the way out of the house, Libby

_____
*   Retired Senior Judge assigned to the Superior Court.

took [Hendershot's] cell phone and t-shirt to cover his mouth to keep him from screaming.

Libby said he took the cell phone to call 911 because their cell phones were both dead. [Nero] was driving the truck as Libby took out the phone battery so it could not be tracked. [Nero] drove the truck to the parking lot of Splash Lagoon and then to his house. When they got to [Nero's] house, Libby wrapped the phone up in a plastic bag and left it in the weeds by the mailboxes near [Nero's] home. In his interview with the police, Libby said he gave the phone to [Nero] when they got in the truck. He also told the police that [Nero's] girlfriend used the phone to call 911 and then [Nero] got rid of it, although he later returned it to Libby. Libby never mentioned to the police that [both] his [and Nero's] cellphone[s were] dead[.]

[Nero] told the police they were afraid of getting in trouble and did not want to get involved that night after seeing the dead body. [Nero] stated he went back to where they left the phone in the mailbox area to pick it up with his girlfriend, Ms. Krisann Wyer, in order to call 911.

Libby never told [Nero] that this was a stolen phone nor did he believe it to be stolen at the time. Libby did, however, plead guilty to theft by unlawful taking in relation to the cell phone.

Darlene Henders[hot], the mother of Cassie Henders[hot], testified she noticed her grandson's phone was missing when she came back to the house. Her daughter used this phone because her phone was smashed. Darlene Henders[hot] purchased this phone for $60. Two days after her daughter died, there was a text sent from the phone which contained a video of Cassie.

[Nero's] live-in girlfriend, Krisann Wyer, testified that when Libby and [Nero] arrived at [Nero's] home, they were upset after finding Libby's girlfriend dead. She had seen Libby with the phone before on at least three or four occasions and thought it was Libby's phone. When Libby and [Nero] arrived they had not called 911. She wanted to call 911, so she and [Nero] retrieved it from the weeds near their mailbox. Then they drove close to Ms. Henders[hot's] home, called 911 using Hendershot's phone, and waited until police arrived before leaving. When they got home, Wyer returned the phone to Libby, who was adamant in asking for its return. Wyer said her phone did not have reception in their house, which is why she did not use her own phone. Wyer had

previous convictions of theft and access device fraud on her record.

Trial Court Opinion, 8/28/2017, at 1-3 (record citations omitted).

Nero was arrested and charged with one count of RSP. The case proceeded to a jury trial, and on March 7, 2017, the jury returned a verdict of guilty, and determined the value of the property stolen was less than $50.00.[1] See Jury Verdict Sheet, 3/7/2017. On April 21, 2017, Nero was sentenced to a term of 12 months' probation, imposed to run concurrently to an unrelated parole violation sentence.

On May 1, 2017, Nero filed two post-sentence motions: one, challenging the sufficiency of the evidence and certain evidentiary rulings; and the second, seeking modification of his sentence based upon the improper grading of his offense as a misdemeanor of the second degree. That same day, the trial court entered two orders. In the first, it denied Nero's post-sentence motion raising sufficiency and evidentiary claims. However, in its second order, the court granted, in part, Nero's motion seeking modification of sentence. Specifically, the court amended the sentencing order to reflect the grading of the offense as a third degree misdemeanor, but denied his request to reduce the length of his probationary term. See Order, 5/1/2017. Thereafter, on May 5, 2017, trial counsel filed a motion to withdraw claiming

_____

[1] See 18 Pa.C.S. § 3903 (grading of theft offenses).

he was retained only for trial and post-sentence motions. The court granted counsel permission to withdraw by order entered May 8, 2017.

On May 17, 2017, Nero filed an untimely, pro se post-sentence motion, which the trial court denied in an order entered on May 25, 2017. In that order, the court also mistakenly informed Nero that he had "a right to appeal within thirty (30) days of the date of this Order[.]"[2] Order, 5/25/2017. Thereafter, Nero attempted to file a pro se notice of appeal on June 1, 2017. However, the clerk of courts did not docket the notice, but instead returned it to Nero for corrections. Appellate counsel entered her appearance on July 7, 2017, and filed a notice of appeal that same day.[3]

Before we address the substantive issue on appeal, we must first determine if this appeal was timely filed, because this Court lacks jurisdiction to consider an untimely appeal. See Commonwealth v. Capaldi, 112 A.3d

_____

[2] See Commonwealth v. Dreves, 839 A.2d 1122, 1127 (Pa. Super. 2003) (en banc) ("[W]here the defendant does not file a timely post-sentence motion, there is no basis to permit the filing of an appeal beyond 30 days after the imposition of sentence.") (emphasis supplied).

[3] On July 10, 2017, the trial court directed Nero to file, within 21 days, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Counsel filed an untimely concise statement on August 18, 2017. Although the late filing would generally result in waiver of the issues on appeal, this Court has held that the untimely filing of a concise statement in a criminal case constitutes per se ineffective assistance of counsel justifying remand for the filing of a concise statement. See Commonwealth v. Thompson, 39 A.3d 335, 339-340 (Pa. Super. 2012). However, where, as here, the trial court filed an opinion addressing the claims raised in the untimely concise statement, "we need not remand and may address the merits of the issues presented." Id. at 340.

1242, 1244 (Pa. Super. 2015) (appellate court may consider the timeliness of an appeal sua sponte). Our review is guided by the following:

> In cases where no post-sentence motions (or Commonwealth's motions to modify sentence) are filed, a defendant must file an appeal within 30 days of imposition of sentence in open court. Pa.R.Crim.P. 720(A)(3); Pa.R.A.P. 903(c)(3). If a defendant files a timely post-sentence motion, the appeal period does not begin to run until the motion is decided. Pa.R.Crim.P. 720(A)(2); Pa.R.A.P. 903(a). Except in circumstances not applicable here, a defendant must file a post-sentence motion within ten days of imposition of sentence. Pa.R.Crim.P. 720(A)(1).
>
> An untimely post-sentence motion does not toll the appeal period. Commonwealth v. Green, 862 A.2d 613, 618 (Pa.Super.2004) (en banc ) ("[T]he time for filing an appeal can be extended beyond 30 days after the imposition of sentence only if the defendant files a timely post-sentence motion.").

Id.

In the present case, trial counsel filed two, timely post-sentence motions on May 1, 2017, which the trial court denied in part, and granted in part, the same day. Therefore, Nero had until May 31, 2017, to file a timely appeal. Consequently, the counseled appeal filed on July 7, 2017, is facially untimely.

Nevertheless, the record reveals Nero attempted to file a pro se notice of appeal on June 1, 2017, at a time when he was not represented by counsel. While this date falls outside the 30-day appeal period, we note Nero was incarcerated on other charges at the time he submitted the appeal. Accordingly, he may benefit from the "prisoner mailbox rule," which holds "a document is deemed filed when placed in the hands of prison authorities for mailing." Commonwealth v. Wilson, 911 A.2d 942, 944 n.2 (Pa. Super.

2006). Here, the postmark on the envelope appended to Nero's pro se notice of appeal bears the date May 30, 2017. Therefore, if that notice of appeal had been filed, it would have been timely.

Nevertheless, rather than filing the notice of appeal, the clerk of courts returned the notice to Nero for corrections. However, pursuant to the Pennsylvania Rules of Appellate Procedure, "[t]he clerk of courts [] lacks the authority to reject, as defective, a timely notice of appeal." Commonwealth v. Williams, 106 A.3d 583, 588 (Pa. 2014). Rather, Rule 905(a)(3) provides:

> Upon receipt of the notice of appeal the clerk shall immediately stamp it with the date of receipt, and that date shall constitute the date when the appeal was taken, which date shall be shown on the docket.

Pa.R.A.P. 905(a)(3). Here, the clerk of courts should have docketed Nero's defective notice to preserve the timeliness of his appeal. Accordingly, we conclude the present appeal was timely filed.

Nero's sole issue for our review is a challenge to the sufficiency of the evidence supporting his conviction of RSP.

Our review of a sufficiency claim is well-established:

> Our standard of review for a challenge to the sufficiency of the evidence is de novo, but our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner. Commonwealth v. Rushing, 627 Pa. 59, 99 A.3d 416, 420–21 (2014). Evidence is sufficient if it can support every element of the crime charged beyond a reasonable doubt. Commonwealth v. Forrey, 108 A.3d 895, 897 (Pa. Super.2015); Commonwealth v. Vogelsong, 90 A.3d 717, 719 (Pa. Super.2014). The trier of fact, while passing upon the credibility of witnesses and the weight of

the proof, is free to believe all, part, or none of the evidence. Commonwealth v. Watkins, 577 Pa. 194, 843 A.2d 1203, 1211 (2003).

Commonwealth v. Robinson, 128 A.3d 261, 264 (Pa. Super. 2015).

Pursuant to Section 3925 of the Pennsylvania Crimes Code, a person is guilty of RSP if:

he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S. § 3925(a). Accordingly, in order to secure a conviction, the Commonwealth must establish three elements: "(1) intentionally acquiring possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." Robinson, supra, 128 A.3d at 265.

In the present case, Nero first argues the Commonwealth did not establish the phone was, in fact, stolen, because Libby had used it in the past, and took it that day only to call 911. See id. Second, Nero insists the evidence was insufficient to demonstrate he, himself, "'received' the stolen property," since Libby was the one who took the phone and dismantled it. Id. at 7. Moreover, Libby testified he "was in possession of the phone when he left [Nero's] home the following morning." Id. at 8. Lastly, Nero contends the Commonwealth failed to prove he knew or should have known the cell phone was stolen because, as noted above, Libby had used the phone in the past. See id. at 8. Accordingly, Nero maintains the evidence was insufficient to support his conviction.

The trial court, however, found the circumstantial evidence presented by the Commonwealth was sufficient to sustain the jury's verdict. The court opined:

A plausible inference from the evidence is that [Nero] and Mark Libby did not intend on returning the phone taken from Darlene Hendershot's home. After the phone was taken, Libby removed the battery in order to avoid GPS tracking. It was then placed in a plastic bag and hidden in the weeds. [Nero] later retrieved the phone and went with his girlfriend near the Hendershot home to make an anonymous phone call to 911. In other words, [Nero] had the intent and ability to control the phone while it was hidden on his property. He did not return the phone to the Hendershots. If he did not know it before, [Nero] knew shortly after midnight on June 26, 2016 that the cell phone did not belong to him or Libby.

The acts of [Nero] and Libby, which include taking the phone from the possession of a deceased person, removing the battery to conceal their movements/whereabouts, placing the phone in a plastic bag, hiding it in the weeds on [Nero's] property and never returning it [to] the Hendershots manifests the mens rea for receiving stolen property.

Trial Court Opinion, 8/28/2017, at 5.

We find no basis to disagree. Although Libby was the person who actually stole the phone from Hendershot's house, in his statement to police, Libby claimed he gave the phone to Nero when he returned to the truck. See N.T., 3/7/2017, at 17. Moreover, after Nero and his girlfriend used the phone to call 911, Nero told Libby he got rid of the phone, but later gave it back to Libby. See id. at 19. Accordingly, the jury could surmise from the evidence presented that, at some point that evening, Nero had possession of the phone which he knew was stolen from Hendershot's home. Indeed, the fact that he

and Libby attempted to dismantle any tracking on the phone and hide it in the weeds on Nero's property, evidenced his knowledge that the phone was stolen. Further, the fact he gave the phone back to Libby rather than return it to the Hendershots, supports the inference that he intended to deprive the rightful owner (Hendershot's family) of its use. Accordingly, Nero is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2018