J-A10041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHRISTOPHER WAYNE GHRIST | |
| Appellant | No. 873 WDA 2015 |

Appeal from the Judgment of Sentence October 31, 2014
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0001036-2012;
CP-65-CR-0004710-2011

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JULY 13, 2016**

Appellant, Christopher Wayne Ghrist, appeals from the judgment of sentence entered in the Westmoreland County Court of Common Pleas, following his jury trial convictions for escape, persons not to possess firearms, receiving stolen property ("RSP"), conspiracy to commit RSP, possession of a controlled substance (marijuana), and possession of drug paraphernalia.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. On October 14, 2011, Trooper Brautigam was on duty when an ongoing investigation led him to the mobile home of Justin Palmer (Appellant's

---

[1] 18 Pa.C.S.A. §§ 5121(a); 6105; 3925; 903 (section 3925 related); 35 P.S. §§ 780-113(a)(16); 780-113(a)(32), respectively.

brother). Trooper Brautigam knocked on the door and, upon answer, Trooper Brautigam immediately smelled an overwhelming odor of marijuana. Trooper Brautigam entered Mr. Palmer's home and found three people inside—Mr. Palmer, Appellant, and a third male. Mr. Palmer claimed ownership of the home and gave Trooper Brautigam consent to search. Trooper Angelicchio arrived on scene and assisted with the search. The troopers saw marijuana and drug paraphernalia in plain view during the search. The troopers also located two lockboxes; Mr. Palmer gave consent for the troopers to open the lockboxes. One lockbox contained a key to a safe, which the troopers found bolted to the floor in the rear master bedroom. Mr. Palmer also gave consent for the troopers to open the safe. In the safe, the troopers found $3,000.00, a loaded firearm, a holster for the firearm, two containers with rice inside, and small rubber bands. The troopers located documents (an insurance paper, court document, and some receipts) belonging to Appellant in the rear master bedroom. The troopers also discovered some of Appellant's clothing in the rear master bedroom. The troopers found more cash and small rubber bands in other places in the house as well.

Mr. Palmer agreed to give a voluntary recorded statement to police, during which Mr. Palmer said Appellant stayed in the rear master bedroom. Mr. Palmer also indicated Appellant had helped Mr. Palmer bolt the safe to the floor. Mr. Palmer conceded Appellant had access to the safe. Mr.

Palmer admitted he purchased the gun illegally for $250.00 around June 2011. Mr. Palmer said the gun had been in the safe "since we got it." During his statement, Mr. Palmer denied ownership of the money, containers with rice, and the rubber bands. Mr. Palmer suggested the money found in the safe might belong to Appellant. Trooper Angelicchio did not believe Mr. Palmer was under the influence of drugs at the time of his statement. The troopers also questioned Appellant. Appellant said he had been staying at Mr. Palmer's house, but he denied knowledge of the safe or its contents. Appellant denied ownership of anything illegal found in the house. Police later learned the firearm had been stolen in May 2011. The troopers arrested Appellant and Mr. Palmer.[2]

After police transported Appellant and Mr. Palmer to the police barracks, Appellant was processed and fingerprinted. Appellant asked to use the restroom, which Trooper Ciriello permitted. When Appellant exited the restroom, he fled through the lobby doors of the building; and police were unable to apprehend him immediately. A few days later, police apprehended Appellant in Georgia.

The Commonwealth subsequently charged Appellant at docket CP-65-CR-0004710-2011 ("docket 4710-2011") with escape; and at docket CP-65-CR-0001036-2012 ("docket 1036-2012") with persons not to possess

---

[2] The troopers did not arrest the third male present at the home.

firearms, RSP, conspiracy to commit RSP, possession of a controlled substance (marijuana), and possession of drug paraphernalia. On June 1, 2012, Appellant filed a motion to sever the escape charge from the remaining charges at trial. The court held a hearing on the motion on July 22, 2013. Appellant argued the charges resulted from two separate incidents, involving separate officers, separate criminal informations, separate locations, and consolidation would be unduly prejudicial. The court denied Appellant's motion deciding the charges were part of an ongoing incident and transaction, where Appellant escaped from police barracks following his arrest for the firearms/drug charges, and all events occurred on the same date.

Appellant proceeded to a jury trial on May 7, 2014. During opening arguments, defense counsel conceded Appellant committed escape. The Commonwealth called Trooper Brautigam, Mr. Palmer, Trooper Angelicchio, and Trooper Ciriello in its case-in-chief. Trooper Brautigam testified about the search that occurred at Mr. Palmer's mobile home on October 14, 2011. Mr. Palmer testified he is Appellant's brother and is the owner of the mobile home at issue. Mr. Palmer said he was smoking marijuana the day of the search and had probably smoked about 3.57 grams that day. Mr. Palmer admitted he gave police consent to search his home. Mr. Palmer claimed ownership of the marijuana and drug paraphernalia found in the home. Mr. Palmer also denied some statements he made to police at the time of the

search. For example, Mr. Palmer told police during his statement that Appellant stays in the rear master bedroom; at trial, Mr. Palmer indicated Appellant stays in the rear master bedroom only occasionally when he needs a place to crash. Mr. Palmer made clear at trial Appellant does not live with him and has a different address. Additionally, Mr. Palmer denied ownership of the storage containers with rice and rubber bands found in the safe during his statement to police; at trial, Mr. Palmer claimed ownership of those items. Further, at trial, Mr. Palmer denied his prior statement to police that Appellant had access to the safe. Mr. Palmer said he might have given some incorrect answers to police during his statement because he was nervous. Mr. Palmer testified at trial that Appellant knew Mr. Palmer owned a gun but did not know the details of how Mr. Palmer acquired the gun. Mr. Palmer indicated he purchased the safe around June 2011 and admitted Appellant helped him bolt the safe to the floor. Mr. Palmer clarified that in his statement to police indicating the gun had been in the safe "since we got it," the "it" he was referring to was the safe, not the gun. As a prior inconsistent statement, the Commonwealth introduced Mr. Palmer's guilty plea in this case. Specifically, Mr. Palmer pled guilty to RSP of the firearm and conspiracy to commit RSP of the firearm **with Appellant**. Mr. Palmer claimed at trial he did not understand what conspiracy meant when he pled guilty to that offense and did so only to receive a particular sentence.

Trooper Angelicchio testified regarding the search of Mr. Palmer's

mobile home. Trooper Angelicchio said Mr. Palmer did not appear to be under the influence of drugs when he gave his statement to police. Trooper Angelicchio indicated rice is commonly used to keep drugs dry. Trooper Angelicchio explained police found some documents and clothing belonging to Appellant in the rear master bedroom. Trooper Angelicchio testified about Appellant's statement to police, during which Appellant denied knowledge of the safe and its contents and denied ownership of anything illegal found in the home. Trooper Angelicchio testified police recovered approximately $10,000.00 from Mr. Palmer's home and his person on the day of the search. Trooper Angelicchio testified Appellant escaped from police barracks following his arrest and was apprehended in Georgia a few days later. During the trooper's testimony, the parties stipulated: (1) the substance found in Mr. Palmer's home was marijuana; (2) the firearm involved was stolen sometime between May 3, 2011 and May 10, 2011 from outside of the owner's residence in Mount Pleasant in Westmoreland County; and (3) Appellant is prohibited from possessing a firearm. Trooper Ciriello testified regarding the circumstances of Appellant's escape from the police barracks. Appellant exercised his constitutional right not to present testimony or evidence in his defense.

On May 8, 2014, the jury convicted Appellant of escape, persons not to possess firearms, RSP, conspiracy to commit RSP, possession of a controlled substance (marijuana), and possession of drug paraphernalia.

J-A10041-16

Following the jury's verdict, the court received a phone call from a juror expressing concern that prospective juror #3 (who did not serve on Appellant's jury) might have given some information prior to trial and verdict about Appellant to other jurors who did serve on Appellant's jury. The court held hearings on June 11, 2014, June 17, 2014, July 16, 2014, August 6, 2014, and August 22, 2014, to determine whether juror misconduct took place and if any such misconduct prejudiced Appellant. During the hearings, the court learned prospective juror #3 might have disclosed to some jurors who served on Appellant's jury that prospective juror #3 was living with (or had lived with) Appellant's girlfriend or ex-girlfriend and was helping to raise Appellant's child; and that Appellant was arrested in Georgia and was not immediately extradited to Pennsylvania for trial. The testimony at the hearings made clear some jurors learned **post-verdict** from Trooper Angelicchio that Appellant had a gun on his person at the time of his arrest in Georgia. Appellant filed a motion for extraordinary relief based on juror misconduct, which the court ultimately denied on October 31, 2014.

On October 31, 2014, the court sentenced Appellant to an aggregate term of seven (7) to fourteen (14) years' imprisonment. Appellant timely filed post-sentence motions on Monday, November 10, 2014. The court held a hearing on the post-sentence motions on April 17, 2015, and denied relief on May 1, 2015. On Monday, June 1, 2015, Appellant timely filed a notice of appeal. On June 5, 2015, the court ordered Appellant to file a concise

statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b);

Appellant timely complied on June 25, 2015.

Appellant raises four issues for our review:

> WHETHER THE TRIAL COURT ERRED AND CAUSED [APPELLANT] PREJUDICE WHEN IT RULED THAT CASE NO. 1036 C 2012 AND CASE NO. 4710 C 2011 SHOULD NOT BE SEVERED?
>
> WHETHER THE TRIAL COURT ERRED BY NOT GRANTING A MISTRIAL AFTER THE EXTRAORDINARY RELIEF HEARING DUE TO JURORS LEARNING PREJUDICIAL INFORMATION ABOUT [APPELLANT] THAT PRECLUDED [APPELLANT] FROM HAVING A FAIR TRIAL?
>
> WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT FOR THE JURY TO CONVICT [APPELLANT] OF THE CHARGES OF CRIMINAL CONSPIRACY—RECEIVING STOLEN PROPERTY, RECEIVING STOLEN PROPERTY AND FELON NOT TO POSSESS A FIREARM?
>
> WHETHER A GUILTY VERDICT WAS WARRANTED ON THE CHARGE OF FELON NOT TO POSSESS A FIREARM WHEN THE WEIGHT OF THE EVIDENCE SHOWED [APPELLANT] TO BE INNOCENT OF THE CHARGE AND THE VERDICT SHOCKS ONE'S CONSCIENCE?

(Appellant's Brief at 5).[3]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Christopher A. Feliciani, we conclude Appellant's first and second issues merit no relief. The trial court opinions comprehensively discuss and properly dispose of those questions. (**See** Trial Court Opinion, filed July 16, 2015, at 1-2;

_____

[3] For purposes of disposition, we have reordered Appellant's issues.

- 8 -

Opinion and Order Disposing of Post-Sentence Motions, filed May 1, 2015, at 3-4; 6-8) (finding: **(issue 1)** Appellant was arrested and charged at docket 1036-2012, for firearms and drug offenses, following search of Mr. Palmer's home on October 14, 2011; on same day, while Appellant was in custody at police barracks for processing, Appellant fled from custody, resulting in escape charge at docket 4710-2011; consolidation of cases for trial was appropriate where both cases involved same defendant and occurred on same date; despite different police officers filing separate criminal complaints, offenses charged were based upon continuation of same act; escape charge at docket 4710-2011 directly flowed from firearms and drug charges at docket 1036-2012; Appellant was not unduly prejudiced by consolidation; **(issue 2)** on day after verdict, juror reported that some jurors possessed personal knowledge about Appellant prior to trial; court scheduled hearings to ascertain validity of this information and what effect, if any, it had upon Appellant's trial; after multiple days of hearings regarding potential juror misconduct, juror testimony confirmed prospective juror #3 had disclosed that he was living with (or had lived with) Appellant's girlfriend or ex-girlfriend and was "raising [Appellant's] son"; prospective juror #3 also mentioned Appellant had been in Georgia for some period of time waiting to be extradited;[4] following hearings court determined prospective

_____

[4] Additionally, with respect to prospective juror #3's comment that Appellant
*(Footnote Continued Next Page)*

juror #3's comments were benign and did not influence jurors on ultimate question of Appellant's guilt or innocence; thus, court found no prejudice occurred and denied Appellant's motion for extraordinary relief). The record supports the court's decisions regarding consolidation of charges for trial and jury conduct. Accordingly, we affirm Appellant's first and second issues on the basis of the trial court's opinions.

For purposes of disposition, we combine Appellant's remaining claims. Appellant argues Mr. Palmer's trial testimony makes clear Mr. Palmer purchased the firearm around June 2011, and Appellant was not present for that transaction. Appellant asserts the Commonwealth presented no evidence linking Mr. Palmer to the theft of the gun from its original owner. Appellant maintains the Commonwealth failed to present sufficient evidence that Mr. Palmer knew the gun that he purchased illegally was stolen. Absent any evidence Mr. Palmer knew the gun was stolen, Appellant contends the jury's guilty verdict on RSP and conspiracy to commit RSP must have been the result of pure speculation. Appellant concedes he is prohibited from possessing a firearm. Nevertheless, Appellant claims the Commonwealth presented no physical evidence tying Appellant to the gun. Appellant insists Mr. Palmer testified Appellant occasionally stayed over at Mr. Palmer's house

*(Footnote Continued)* ───────

had been in Georgia waiting to be extradited, we note defense counsel conceded during open arguments that Appellant committed escape; and Trooper Angelicchio testified (without objection) that Appellant was apprehended in Georgia a few days after his escape.

- 10 -

but Mr. Palmer kept control of the gun by placing it in a locked safe. Appellant emphasizes that Mr. Palmer purchased the gun, the gun was found in Mr. Palmer's home in Mr. Palmer's safe, and Mr. Palmer kept the key to the safe in a lockbox under Mr. Palmer's sole control. With respect to his persons not to possess firearms conviction specifically, Appellant stresses the Commonwealth did not obtain fingerprint/DNA analysis linking Appellant to the gun or any other item confiscated from Mr. Palmer's home. Appellant highlights Mr. Palmer's testimony that Appellant stayed at Mr. Palmer's mobile home occasionally, Mr. Palmer controlled the gun and kept it in a locked safe. Mr. Palmer did not state he had ever observed Appellant shoot the gun, handle the gun, or request to see the gun. Appellant concludes the Commonwealth presented insufficient evidence to sustain his convictions for RSP, conspiracy to commit RSP, and persons not to possess firearms;[5] and this Court must reverse Appellant's convictions for those offenses. Alternatively, Appellant contends the verdict for his persons not to possess firearms conviction was against the weight of the evidence, and this Court must grant Appellant a new trial for that crime. We disagree.

When examining a challenge to the sufficiency of evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every

---

[5] Appellant does not challenge his drug-related convictions.

element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Hansley**, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting **Commonwealth v. Jones**, 874 A.2d 108, 120-21 (Pa.Super. 2005)). Additionally:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.

Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Champney**, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004)

(internal citations omitted).

The Crimes Code defines the offenses of persons not to possess firearms, conspiracy, and RSP, in pertinent part, as follows:

**§ 6105.  Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a)   Offense defined.**—

(1)   A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

\* \* \*

**§ 903.  Criminal conspiracy**

**(a)    Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1)    agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2)    agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\* \* \*

**(e)    Overt act.**—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

* * *

## § 3925. Receiving stolen property

(a) **Offense defined.**—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

(b) **Definition.**—As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

18 Pa.C.S.A. §§ 6105; 903; 3925.

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession…." ***Jones, supra*** at 121 (internal citation omitted). "Constructive possession is the ability to exercise conscious control or dominion over the [contraband] and the intent to exercise that control." ***Id.*** (internal citation omitted). "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." ***Id.*** (internal citation omitted). "Constructive possession may be found in one or more actors where the item [at] issue is in an area of joint control and equal access." ***Commonwealth v. Valette***, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992).

To sustain a conviction for criminal conspiracy:

[T]he Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in

- 14 -

furtherance of the conspiracy.

***Commonwealth v. Murphy***, 795 A.2d 1025, 1037-38 (Pa.Super. 2002), *aff'd*, 577 Pa. 275, 844 A.2d 1228 (2004). "Circumstantial evidence may provide proof of the conspiracy." ***Jones, supra*** at 121. "The conduct of the parties and the circumstances surrounding such conduct may create a 'web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." ***Id.*** (internal citation omitted). Additionally:

> An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

***Id.*** at 121-22 (quoting ***Commonwealth v. Greene***, 702 A.2d 547, 554 (Pa.Super. 1997)).

To sustain a conviction for RSP, the Commonwealth must prove the defendant: (1) intentionally acquired possession of movable property of another; (2) with knowledge or belief it was probably stolen; and (3) with the intent to permanently deprive the owner of his property. ***Commonwealth v. Robinson***, 128 A.3d 261, 265 (Pa.Super. 2015) (*en banc*) (quoting 18 Pa.C.S.A. § 3925). A "guilty knowledge" inference arises from the unexplained possession of recently stolen goods. ***Robinson, supra*** at 267. Recency of theft, however, is not the only evidence that can support an inference of guilty knowledge. ***Id.*** at 268. "Circumstantial

evidence of guilty knowledge may include, *inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime." **Id.** Nevertheless, absent any other circumstantial evidence of guilty knowledge, mere possession of the property at issue alone is insufficient to sustain a conviction for RSP. **Id.** at 269.

Instantly, the trial court addressed Appellant's sufficiency and weight challenges as follows:

> In the present cases, during the Post-Sentence Motions Hearing, defense counsel alleged that these convictions were the result of a case built entirely upon circumstantial evidence premised upon the credibility of [Mr.] Palmer. In support of this position, defense counsel alleged that there was an absence of [Appellant's] DNA evidence on the gun, on the safe, or on any of the ammunition. Defense counsel also alleges that there was a misunderstanding between Mr. Palmer and Trooper Angelicchio regarding the firearm in this case.[6]
>
> This [c]ourt, having reviewed the entire record in this case, specifically the circumstantial evidence, and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, finds that there was

---

[6] The "misunderstanding" defense counsel referenced concerned Mr. Palmer's recorded statement to police indicating the gun had remained in the safe "since we got it." Defense counsel claimed Mr. Palmer believed his response to police questioning was about the safe, not the gun.

sufficient evidence to support [Appellant's] convictions of the Firearms charge, Criminal Conspiracy, and Receiving Stolen Property. Additionally, based upon this [c]ourt's review of the entire record, this [c]ourt does not find that the jury's verdict is so contrary to the evidence as to shock this [c]ourt's sense of justice. The jury was certainly capable of determining whether to believe all, part, or none of the evidence with respect to whether the Commonwealth met its burden with respect to each count and to determine the credibility of each witness. Therefore, this [c]ourt does not find that the jury's verdict was against the weight of the evidence.

(Opinion and Order Disposing of Post-Sentence Motions at 5-6). We agree Appellant's sufficiency and weight challenges merit no relief. ***See Champney, supra***; ***Hansley, supra***; ***Jones, supra***.

The Commonwealth introduced the following testimony/evidence relative to Appellant's persons not to possess firearms, conspiracy, and RSP convictions: (1) the parties stipulated Appellant is prohibited from possessing a firearm; (2) police recovered a loaded firearm from a locked safe in the rear master bedroom of Mr. Palmer's mobile home on October 14, 2011; (3) Mr. Palmer purchased the firearm illegally around June 2011 for $250.00; (4) Mr. Palmer purchased the safe around June 2011; (5) the parties stipulated the gun was stolen sometime between May 3-10, 2011 outside of the owner's residence in Mount Pleasant, Pennsylvania;[7] (6) Mr. Palmer is Appellant's older brother; (7) Appellant helped Mr. Palmer bolt the

---

[7] The distance between Mr. Palmer's residence in Greensburg, PA and the gun owner's residence in Mount Pleasant, PA is approximately twelve miles.

safe to the floor in Mr. Palmer's rear master bedroom; (8) according to Mr. Palmer, the gun remained in the safe "since we got it"; (9) Appellant was present at the time of the search of Mr. Palmer's home but denied knowledge of the safe or its contents following the search; (10) police found documents belonging to Appellant and some of Appellant's clothing in the rear master bedroom; (11) Mr. Palmer gave a voluntary recorded statement to police after the search, at which time Mr. Palmer admitted Appellant stays in the rear master bedroom, suggested the money found in the safe might belong to Appellant, and admitted Appellant had access to the safe; (12) in his recorded statement to police, Mr. Palmer denied ownership of the containers with rice and rubber bands found in the safe; (13) Mr. Palmer pled guilty in this case to RSP and conspiracy to commit RSP with Appellant;[8] (14) Appellant gave a statement to police following the search, during which Appellant admitted he had been staying at Mr. Palmer's home; and (15) following Appellant's arrest, he fled from police custody.

Although Mr. Palmer testified at trial that Appellant had no knowledge about Mr. Palmer's acquisition of the gun, stayed at Mr. Palmer's house only occasionally, and had no access to the locked safe, the jury was free to disregard this testimony (which took place after Mr. Palmer pled guilty) and

---

[8] The Commonwealth read aloud from Mr. Palmer's oral guilty plea colloquy where the prosecutor said: "[Mr. Palmer] is charged with criminal conspiracy, a felony of the second degree, he conspired with [Appellant] regarding the receipt of this stolen firearm." (N.T. Trial, 5/7/14, at 58).

to credit Mr. Palmer's prior recorded statement to police immediately following the search. ***See Champney, supra***; ***Hansley, supra***; ***Jones, supra***. Mr. Palmer's recorded statement to police and the evidence recovered from the search gave the jury sufficient evidence to convict Appellant of persons not to possess firearms, based on a constructive possession theory; and the verdict was not against the weight of the evidence. ***See*** 18 Pa.C.S.A. § 6105(a)(1); ***Champney, supra***; ***Valette, supra***; ***Hansley, supra***; ***Jones, supra***.

Additionally, the jury was free to discredit Mr. Palmer's trial testimony that he did not understand what conspiracy meant when he entered his guilty plea and did so only to secure a particular sentence; the jury was free to favor Mr. Palmer's assertion at his oral guilty plea colloquy that he had conspired with Appellant to commit RSP of the gun at issue. ***See Champney, supra***; ***Hansley, supra***; ***Jones, supra***. The jury heard that Mr. Palmer illegally purchased the stolen firearm around June 2011 (around one month after it was stolen), bought a safe in June 2011, and, with Appellant's aid, bolted the safe to the floor of the rear master bedroom in which Appellant periodically resides. The jury was also free to interpret Mr. Palmer's statement to police, that the gun had remained in the safe "since we got it," as evidence that Appellant and Mr. Palmer acquired the gun together. The jury apparently rejected Mr. Palmer's contention that "it" referred only to the safe but not the gun. Mr. Palmer's statement to police,

his guilty plea, and Appellant's flight from custody was sufficient circumstantial evidence of Appellant's guilty knowledge and participation in the conspiracy to commit RSP with his brother. *See* 18 Pa.C.S.A. §§ 903; 3925; *Robinson, supra*; *Jones, supra*. Accordingly, Appellant's third and fourth issues merit no relief and we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2016

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA – CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA )

                    VS.                       )     No.    4710 C 2011

)

)

CHRISTOPHER WAYNE GHRIST

**OPINION AND ORDER OF COURT**

The instant case is before the Court for purposes of issuing a brief opinion on

defendant's Notice of Appeal to the Pennsylvania Superior Court pursuant to

Pennsylvania Rule of Appellate Procedure 1925. Pursuant to Pennsylvania Rule of

Appellate Procedure 1925, the Court hereby incorporates the May 1, 2015 Opinion and

Order of Court as the brief opinion in support of the Order of Court subject to the

Defendant's appeal

Accordingly, the Court enters the following Order:

1

# IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
)
VS. ) No.   4710 C 2011
) 1036 C·2012
)
)
CHRISTOPHER WAYNE GHRIST )

## ORDER OF COURT

AND Now, to wit, this 15th day of July, 2015, it is hereby ORDERED, ADJUDGED and DECREED that the foregoing Opinion as well as the Opinion and Order of Court filed on May 1, 2015 shall constitute the Court's brief statement of reasons for the May 1, 2015 Order of Court, pursuant to Pa. R.A.P. 1925.

BY THE COURT:

_____, J
Christopher A. Feliciani, Judge

ATTEST:

_____
Clerk of Courts

cc:    File
        Allen Powanda, Esq. – District Attorney's Office
        Andrew Skala, Esq. – For Defendant Christopher Ghrist
        Court Administrator's Office

2

# IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
)
VS. ) No. 4710 C 2011
) 1036 C 2012
)
)
CHRISTOPHER WAYNE GHRIST

## OPINION AND ORDER OF COURT

The above-captioned consolidated cases are before this Court for the disposition of the defendant's Post Sentence Motions filed pursuant to Pennsylvania Rules of Criminal Procedure 720(B). The defendant, Christopher Wayne Ghrist (hereinafter "Defendant") was charged with the following crimes:

At Case Number 4710 C 2011:

Count 1-Escape, in violation of 18 Pa.C.S.A. § 5121(a), 3rd degree felony.

At Case Number 1036 C 2012:

Count 1-Person not to possess, use, manufacture, control, sell or transfer firearms, in violation of 18 Pa.C.S.A. § 6105(a)(1), 2nd degree felony.

Count 2-Receiving Stolen Property, in violation of 18 Pa.C.S.A. § 3925(a), 2nd degree felony.

Count 3-Criminal Conspiracy-Receiving Stolen Property, in violation of 18 Pa.C.S.A. § 903(c), 2nd degree felony.

Count 4-Intent to Possess a Controlled Substance, in violation of 35 P.S. 780-113(a)(16), misdemeanor.

1

Count 5-Use/Possession of a Controlled Substance, in violation of 35 P.S. 780-113(a)(32), misdemeanor.

The Defendant was also charged with three additional offenses, two of which were dismissed by the Magisterial District Judge, and one charge which was amended by the criminal information.

The charges stem from a search conducted on October 14, 2011, by Pennsylvania State Trooper Teko Angelicchio at the residence of Justin Palmer, situate in Hempfield Township, Westmoreland County. Following the Defendant's arrest, preliminary hearings were conducted by Magisterial District Judge James Falcon on December 13, 2011 and by Magisterial District Judge Mark Mansour on March 9, 2012. Each case was held for court, and criminal informations were filed charging the Defendant with the above-mentioned crimes. The cases were consolidated for purposes of trial and the Defendant filed a Motion for Severance. Following a hearing on July 22, 2013, the Honorable Alfred Bell denied Defendant's Motion for Severance. The parties also submitted briefs in Support of a Petition for Writ of Habeas Corpus which was denied on October 25, 2013 by Judge Bell.

On May 8, 2014, the Defendant was found Guilty of all charges by a jury, and a pre-sentence investigation was ordered. As a result of one of the jurors reporting a matter of potential misconduct by a fellow juror that allegedly was brought to light after the defendant was convicted, the Defendant filed a Motion for Extraordinary Relief. As a result of Defendant's Motion for Extraordinary Relief, the Court scheduled hearings during the summer of 2014, to address the issue of whether or not jury bias existed. On October 30, 2014, said motion was denied.

2

The Defendant was sentenced by the Court on October 31, 2014. At Case Number 4710 C 2011, the Defendant was sentenced at Count 1, to a period of incarceration of not less than 2 years nor more than 4 years. At Case Number 1036 C 2012, the Defendant was sentenced at Count 1, to a period of incarceration of 5 to 10 years. At Count 2, the Defendant was sentenced to a period of incarceration not less than 2 years nor more than 4 years concurrent to the sentence imposed at Count 1. At Count 3, the Defendant was sentenced to a period of incarceration of 2 to 4 years concurrent to the sentence imposed at Counts 1 and 2. At Count 4, the Defendant was sentenced to a period of incarceration of 6 to 12 months concurrent to the sentences imposed at Counts 1, 2, and 3. At Count 5, the Defendant was sentenced to a period of incarceration of 6 to 12 months concurrent to the sentences imposed at Counts 1, 2, 3, and 4. The sentence imposed at case number 4710 C 2011 ran consecutive to the sentence in case number 1036 C 2012. On November 10, 2014, the Defendant timely filed the Post-Sentence Motions presently before this Court.

The Defendant alleges the following:

I.     The trial court erred in not severing cases 1036 C 2012 and 4710 C 2011.

II.    The Commonwealth failed to present sufficient evidence for the jury to reach the verdict of guilty to the Firearms charge, Criminal Conspiracy, and Receiving Stolen Property.

III.   The verdict was against the weight of the evidence.

IV.   The trial court erred in failing to declare a mistrial when some of the jurors possessed personal information prior to this trial.

V.    The trial court erred in sentencing the Defendant.

First we shall address the issue of severance of the consolidated cases. Pursuant to Pa.R.Crim.P. 582(a)(1) offenses charged in separate indictments or informations may

3

be tried together if: (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury, so that there is no danger of confusion; (b) the offenses charged are based upon the same act or transaction. Under Pa.R.Crim.P.583, the court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

In the present cases, the Defendant was arrested and charged at case number 1036 C 2012. On the same day, while he was present and in custody at the police station for processing, the Defendant fled and was subsequently charged with escape at case number 4710 C 2011. This Court concludes that the consolidation of the cases was appropriate. Both cases involved the same defendant and occurred on the same date. Despite different police officers filing separate criminal complaints, this Court concludes that the offenses charged were based upon the same act or a continuation of the same act. The escape charge at case number 4710 C 2011 directly flowed from the Firearms charge at case number 1036 C 2012. Therefore, this Court finds that the cases were properly consolidated and tried together and that the Defendant was not unduly prejudiced thereby.

Secondly, we shall address the issues of sufficiency of the evidence and weight of the evidence. "To evaluate [a] sufficiency of evidence [claim], [a Court] must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt." Commonwealth v.

4

Bundridge, 303 Pa. Super 267, 271-272, 449 A.2d 681 (1982.) "[W]here there is an insufficiency of evidence determination, the only remedy is the discharge of the defendant for the crime or crimes charged." Commonwealth v. Vogel, 501 Pa 314, 324, 461 A.2d 604 (1983.)

"The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Champney, 574 Pa 435, 443, 832 A.2d 403 (2003.) "Thus, an appellate court may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." Id. "[A]n adverse ruling to the prosecution on the question of the weight of the evidence is remedied by the award of a new trial." Comm v. Vogel, 501 Pa 314, 324.

In the present cases, during the Post-Sentence Motions Hearing, defense counsel alleged that these convictions were the result of a case built entirely upon circumstantial evidence premised upon the credibility of Justin Palmer. (N.T. 15-16, 4/17/15.) In support of this position, defense counsel alleged that there was an absence of the Defendant's DNA evidence on the gun, on the safe, or on any of the ammunition. Id. at 16. Defense counsel also alleges that there was a misunderstanding between Mr. Palmer and Trooper Angelicchio regarding the firearm in this case. Id.

This Court, having reviewed the entire record in this case, specifically the circumstantial evidence, and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, finds that there was sufficient evidence to support the Defendant's convictions of the Firearms charge, Criminal Conspiracy, and Receiving Stolen Property. Additionally, based upon this Court's review of the entire record, this

5

Court does not find that the jury's verdict is so contrary to the evidence as to shock this Court's sense of justice. The jury was certainly capable of determining whether to believe all, part, or none of the evidence with respect to whether the Commonwealth met its burden with respect to each count and to determine the credibility of each witness. Therefore, this Court does not find that the jury's verdict was against the weight of the evidence.

Next, the Court addresses the issue of extraordinary relief. "A criminal defendant's right to an impartial jury is explicitly granted by Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment of the United States Constitution." Commonwealth v. Ellison, 588 Pa 1, 7-8, 902 A.2d 419 (2006.) "The jury selection process is crucial to the preservation of that right." Id. at 8. Once the trial court is made aware that a juror or jurors have been exposed to an extraneous influence and it has been established by competent testimony, the trial judge must then assess the prejudicial effect of such influence. Commonwealth v. Messersmith, 2004 PA Super 401, 860 A.2d 1078, 1085. "A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." Commonwealth v. Rega, 593 Pa 659, 692, 933 A.2d 997 (2007.).

In the present cases, on May 9, 2014, one day after the jury verdict was rendered, David Brown, Juror # 3, informed the Westmoreland County Court Administrator's Office and this Court, that some of the jurors possessed personal information about the Defendant prior to his trial. In order to ascertain the validity of this information and what effect, if any, it had upon the trial, the Court scheduled evidentiary hearings calling each

6

of the jurors who purportedly possessed information pertaining to the Defendant. After four days of evidentiary hearings regarding possible juror misconduct, multiple jurors testified that during the jury selection process, while the panel of jurors was seated in the courtroom, one of the jurors in the venire, Sherrard Stape, original juror # 3, informed them that he was "raising the Defendant's son." During the evidentiary hearing on June 11, 2014, Mr. Brown, Juror # 3, testified that the first comment that he heard was in the jury room, post verdict, as the jurors waited for the attorneys to come back and thank them. (N.T., 4, 6/11/14.) Mr. Brown testified that he first heard a comment from Juror #4. Id. Mr. Brown testified that, "The comment I heard was, well, you know, that the original juror 3, meaning the selection candidate, is raising Mr. Ghrist's son." Id.

Additionally, during the evidentiary hearing on July 16, 2014, Kurt Bue, Juror #1, testified relative to the nature of a discussion that he had with the original juror # 3, Mr. Stape during the jury selection process. (N.T. 3, 7/16/14.) Mr. Bue testified that Mr. Stape told him that he was living with Mr. Ghrist's girlfriend or ex-girlfriend at that time. Id. Additionally, Mr. Bue testified that, "And I think he mentioned something that Mr. Ghrist had been in Georgia for some period of time, being [extradited]." Id. at 4. Defense counsel maintains that this evidence demonstrates that the Defendant was denied a fair and impartial trial. Mr. Stape also testified at the hearing on Defendant's Motion for Extraordinary Relief. Mr. Stape's description of what he communicated to the other jurors is of the type and nature considered by the court to be benign and would not have, and did not influence the jurors in this matter on the ultimate question of guilt or innocence. Accordingly, this Court found that there being no prejudice resulting from

7

the communications made by Mr. Stape during the jury selection process, that the Defendant's Motion for Extraordinary Relief was without merit.

Finally, the Court addresses the issue of modification of sentence. The Defendant seems to argue that the Court abused its discretion in sentencing because the sentence imposed upon his co-defendant, was not as lengthy as his. "[S]entencing is a matter that is vested in the sound discretion of the sentencing court." Commonwealth v. Lee, 2005 PA Super 160, 876 A.2d 408, 413. In the present cases, during the sentencing phase, the Court reviewed the pre-sentence investigation report which revealed that the Defendant's Prior Record Score was calculated as a 5. Mr. Palmer, the co-defendant, had a Prior Record Score of 4 and was sentenced to 18 to 36 months. During the Post-Sentence Motions Hearing, defense counsel argued that there was a disproportionate sentence to Mr. Palmer because the facts of this case as they were revealed during the trial, pointed to Mr. Palmer being the individual who purchased the handgun. (N.T. 6, 4/17/15.) Additionally, defense counsel requested that the sentences imposed by the Court at Case Number 1036 C 2012 and Case Number 4710 C 2011 be run concurrently because of the Defendant's age and criminal history. Id. at 7. Again, sentencing matters are within the sound discretion of the trial court, and the sentences imposed by the Court fell within the standard range of sentencing guidelines despite being run consecutively.

This Court finds that the issue of a disproportionate sentence being imposed upon one's co-defendant is of no consequence to the instant case. Even if it were a matter for consideration on appeal, the sentence imposed upon Defendant is not disproportionate to the sentence imposed upon the co-defendant, Mr. Palmer's for various reasons, including the fact that Palmer entered a negotiated guilty plea at Case No. 1011 C 2012, which

8

included a withdrawal by the Commonwealth of the firearms charge. The Defendant proceeded with a jury trial and was convicted by a jury, of all charges including the charge of Person not to possess, use, manufacture, control, sell or transfer firearms. This Court concludes that the sentence was appropriate and within the standard range of the sentencing guidelines as contained in 204 Pa. Code § 303.16(a). Therefore, the Defendant's Motion for Modification of his sentence is Denied.

Accordingly, the Court enters the following Order:

9

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA – CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA )
)
VS. )   No.   4710 C 2011
)        1036 C 2012
)
)
)
CHRISTOPHER WAYNE GHRIST )

**ORDER OF COURT**

AND NOW, to wit, this 1st day of May, 2015, for the reasons set forth in the foregoing Opinion, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

1. Defendant's Post Trial Motion regarding severance of cases 1036 C 2012 and 4710 C 2011 is DENIED.

2. Defendant's Post Trial Motion regarding sufficiency of the evidence is DENIED.

3. Defendant's Post Trial Motion regarding weight of the evidence is DENIED.

4. Defendant's Post Trial Motion regarding defendant's request for a mistrial based on the jurors possessing personal information prior to trial is DENIED.

5. Defendant's Post Trial Motion for Modification of Sentence is DENIED.

BY THE COURT,

_____, J
Christopher A. Feliciani, Judge

ATTEST:

_____
Clerk of Courts

cc:   File
Allen Powanda, Esq. – District Attorney's Office
Andrew Skala, Esq. – For Defendant Christopher Ghrist
Court Administrator's Office

10