J-S20037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ERNEST WILLIAM REYNOLDS, III | : | |
| | : | |
| Appellant | : | No. 32 MDA 2018 |

Appeal from the Judgment of Sentence March 29, 2016
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s):  CP-41-CR-0001937-2014

BEFORE:  GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JUNE 11, 2018**

Appellant, Ernest William Reynolds, III, appeals *nunc pro tunc* from the judgment of sentence entered in the Lycoming County Court of Common Pleas, following his jury trial convictions for retail theft, conspiracy to commit retail theft, attempted retail theft, and receiving stolen property.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On several dates in September 2014, Appellant and two cohorts stole, *inter alia*, DVDs from a Target store in Williamsport, Pennsylvania and sold them to an FYE store.  On October 28, 2014, the Commonwealth charged Appellant with one count each of retail theft, conspiracy to commit retail theft, attempted retail theft, and receiving stolen property.

---

[1] 18 Pa.C.S.A. §§ 3929(a)(1), 903(a), 901(a), and 3925(a), respectively.

Appellant proceeded to a jury trial on January 29, 2016. At trial, Ronald Hollenbach, one of Appellant's co-conspirators, testified he and Appellant made an agreement in September 2014 to steal DVDs from Target and sell them. Mr. Hollenbach explained he drove his black Volvo to Target with Appellant several times in September 2014. On those occasions, Mr. Hollenbach and/or Appellant entered the Target, took a backpack from off the shelf, placed several DVDs in the backpack, left the Target without paying for any items, removed the retail packaging from the DVDs, and sold them as used DVDs to FYE. Mr. Hollenbach stated Joel Martinez-Colon joined him and Appellant to carry out their plan on a few occasions. Mr. Hollenbach explained he and Appellant split the proceeds from the sales to FYE and used the money to purchase heroin.

Specifically, Mr. Hollenbach testified he went to the Target with Appellant on September 13, 20, and 30, 2014. Mr. Hollenbach identified his signature on receipts from FYE respectively dated September 13 and 20, 2014, which indicate Mr. Hollenbach received payment for several DVDs. Mr. Hollenbach said he and Appellant entered the Target again on September 30, 2014, and proceeded to gather backpacks and DVDs. When Mr. Hollenbach saw police positioned outside the store, he abandoned a backpack and DVDs, attempted to leave the store, and observed Appellant exit the store and run through the parking lot to flee the police. Mr. Hollenbach explained police arrested him at Target on September 30, 2014, and he admitted to authorities

that he and Appellant had committed the offenses of September 13 and 20, 2014.

Mr. Martinez-Colon, another co-conspirator, also testified. He stated he agreed with Mr. Hollenbach and Appellant to steal and sell DVDs, a plan that Appellant had developed. Mr. Martinez-Colon explained the trio split the proceeds from the DVD sales and used the money to buy heroin.

Mr. Martinez-Colon testified he went to the Target with Mr. Hollenbach and Appellant on September 7, 9, and 24, 2014. Mr. Martinez-Colon said on September 7, 2014, the three men went to Target in a black Volvo. That day, Mr. Martinez-Colon entered the Target, placed several DVDs into a backpack, left the store without paying, and removed the retail packaging from the DVDs. Then, Mr. Martinez-Colon, Mr. Hollenbach, and Appellant went to FYE to sell the DVDs. Mr. Martinez-Colon identified his signature on a receipt from FYE dated September 7, 2014, indicating FYE paid him for DVDs. Mr. Martinez-Colon testified the trio returned to Target in the black Volvo on September 9, 2014. This time, Mr. Martinez-Colon stayed in the car, while Appellant went into Target. Mr. Martinez-Colon stated he sold to FYE the DVDs Appellant took from Target on September 9th and identified his signature on an FYE receipt dated September 9, 2014. Similarly, Mr. Martinez-Colon, Mr. Hollenbach, and Appellant went to Target on September 20, 2014. Mr. Martinez-Colon explained only Appellant and Mr. Hollenbach entered the store. Mr. Martinez-Colon stated he sold to FYE the DVDs Mr. Hollenbach and

Appellant took from Target and identified his signature on an FYE receipt dated September 20, 2014.

Next, Ryan Schlopy testified. Mr. Schlopy explained he worked in asset protection in the Williamsport Target during September 2014. Mr. Schlopy stated he contacted Police Chief Christopher McKibben in mid-September 2014, after he investigated several similar thefts which occurred that month. Each time, individuals took a backpack from the shelf, placed DVDs inside the backpack, left the store without paying for those items, and returned to a black sedan.

Mr. Schlopy testified he called Chief McKibben again on September 30, 2014, when Mr. Schlopy observed Mr. Hollenbach and Appellant enter the store and followed them through the sales floor. Mr. Schlopy explained he watched Mr. Hollenbach take a black backpack from the shelf. Mr. Schlopy saw both Mr. Hollenbach and Appellant place DVDs into bags they had in separate shopping carts. Mr. Schlopy testified he observed Mr. Hollenbach abandon his shopping cart and its contents before Chief McKibben apprehended him. Mr. Schlopy stated Mr. Hollenbach's arrest was within Appellant's line of sight. After police arrested Mr. Hollenbach, Mr. Schlopy saw Appellant pause in a check-out lane, walk out of the store, and run across the parking lot. Subsequently, Mr. Schlopy discovered Appellant's photo ID and Social Security card in the check-out lane.

Mr. Schlopy testified he studied surveillance video and Target's

inventory system to determine what items Appellant and/or his cohorts removed from the store and the retail value of those items. Mr. Schlopy identified the approximate retail value of merchandise Target lost as a result of each theft: on September 7th, Target lost $393.89; on September 9th, Target lost $500.86; on September 13th, Target lost $560.83; and on September 20th, Target lost $924.23.

Mr. Schlopy also explained he investigated a unique theft that occurred on September 24, 2014. Mr. Schlopy observed *via* surveillance video Appellant remove a Garmin GPS bracelet from the store without paying. Mr. Schlopy noted the retail value of the Garmin item is $249.99.

Finally, Chief McKibben testified he worked with Mr. Schlopy throughout September 2014 to investigate the thefts and determine the value of the items Appellant and/or his co-conspirators took from the Target store. Chief McKibben reviewed Target surveillance video and obtained transaction receipts from FYE. Chief McKibben stated Appellant removed from Target, in September 2014, merchandise with a cumulative retail value of $2,235.91. Mr. Hollenbach stole merchandise totaling $1,485.06 in retail value, and Mr. Martinez-Colon stole merchandise with a total retail value of $1,958.95.

On January 29, 2016, the jury convicted Appellant of one count each of retail theft, conspiracy to commit retail theft, attempted retail theft, and receiving stolen property. The court sentenced Appellant on March 29, 2016, to an aggregate term of thirty (30) to ninety-six (96) months' incarceration,

plus costs, fines, and restitution. On November 6, 2017, the court reinstated Appellant's direct appeal rights *nunc pro tunc*, upon Appellant's request. Appellant filed a timely notice of appeal on November 9, 2017. On November 14, 2017, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), and Appellant complied.[2] On February 12, 2018, Appellant's counsel filed in this Court an application to withdraw as counsel and an **Anders** brief.

As a preliminary matter, counsel seeks to withdraw his representation pursuant to **Anders v. California,** 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and **Commonwealth v. Santiago,** 602 Pa. 159, 978 A.2d 349 (2009). **Anders** and **Santiago** require counsel to: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is

---

[2] Appellant's Rule 1925(b) statement was not timely filed. Nevertheless, we decline to waive Appellant's issue because the trial court received the statement and addressed Appellant's issue in a written opinion. **See Commonwealth v. Burton**, 973 A.2d 428 (Pa.Super. 2009) (*en banc*) (allowing for immediate review under these circumstances).

sufficient. ***Commonwealth v. Wrecks***, 934 A.2d 1287, 1290 (Pa.Super. 2007). After establishing that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous. ***Commonwealth v. Palm***, 903 A.2d 1244, 1246 (Pa.Super. 2006). ***See also Commonwealth v. Dempster***, 2018 PA Super 121 (filed May 8, 2018) (*en banc*).

In ***Santiago, supra***, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither ***Anders*** nor ***McClendon***[3] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under ***Anders*** are references to anything in the record that might arguably support the appeal.
>
> \* \* \*
>
> Under ***Anders***, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

***Santiago, supra*** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state

---

[3] ***Commonwealth v. McClendon,*** 495 Pa. 467, 434 A.2d 1185 (1981).

> counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 178-79, 978 A.2d at 361.

Instantly, the petition to withdraw states counsel conducted a conscientious review of the record and determined the appeal is wholly frivolous. Counsel also supplied Appellant with a copy of the brief and a letter explaining Appellant's right to retain new counsel or to proceed *pro se* to raise any additional issues Appellant deems worthy of this Court's attention. In the *Anders* brief, counsel provides a summary of the relevant facts and procedural history of the case. Counsel's argument refers to relevant law that might arguably support Appellant's issue. Counsel further states the reasons for his conclusion that the appeal is wholly frivolous. Therefore, counsel has substantially complied with the requirements of *Anders* and *Santiago*. Appellant has not responded to the *Anders* brief *pro se* or with newly retained counsel.

Counsel raises the following issue on Appellant's behalf:

> WAS THE EVIDENCE PRESENTED SUFFICIENT TO PROVE THAT…APPELLANT CONSPIRED WITH TWO OTHERS AND COMMITTED THE COGNATE OFFENSES AS CHARGED?

(*Anders* Brief at 6).[4]

---

[4] Counsel also included an issue regarding his petition to withdraw as counsel, which we have omitted from the statement of questions presented.

Appellant argues the Commonwealth presented insufficient evidence to support his convictions, because the Commonwealth failed to introduce physical evidence corroborating the testimony of Appellant's co-conspirators. Appellant avers the evidence also supported his renunciation defense to the charge for attempt to commit retail theft. Appellant concludes this Court should vacate his convictions. We disagree.

With respect to a sufficiency claim:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. **The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.** Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting

*Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003))

(emphasis added).

The Crimes Code defines the offense of retail theft in relevant part as

follows:

**§ 3929.  Retail theft**

**(a)   Offense defined.—**A person is guilty of a retail theft if he:

(1)  takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof;

*     *     *

**(b)   Grading.—**

(1)   Retail theft constitutes a:

*     *     *

(i) Felony of the third degree when the amount involved exceeds $1,000….

*     *     *

18 Pa.C.S.A. § 3929(a)(1), (b)(1)(i).

The Crimes Code defines conspiracy, in part, as follows:

**§ 903.  Criminal conspiracy**

**(a)    Definition of conspiracy.—**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1)    agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2)  agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\* \* \*

**(e)  Overt act.**—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

\* \* \*

18 Pa.C.S.A. § 903(a), (e).  To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: (i) entered into an agreement to commit or aid in an unlawful act with another person or persons; (ii) with a shared criminal intent; and (iii) an overt act was done in furtherance of the conspiracy.  *Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa.Super. 2005).  Additionally:

> **Circumstantial evidence may provide proof of the conspiracy.**  The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.
>
> \* \* \*
>
> An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.  These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Id.* at 121-22 (internal citations and quotation marks omitted) (emphasis added).  Nevertheless, circumstances such as an association between alleged

- 11 -

conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and/or participation in the object of the conspiracy, are relevant to prove a conspiracy, when "viewed in conjunction with each other and in the context in which they occurred." **_Commonwealth v. Lambert_**, 795 A.2d 1010, 1016 (Pa.Super. 2002), _appeal denied_, 569 Pa. 701, 805 A.2d 521 (2002).

Section 901 of the Crimes Code defines criminal attempt in pertinent part as follows:

**§ 901.  Criminal attempt**

**(a)  Definition of attempt.—**A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

\*    \*    \*

**(c)  Renunciation.**—

(1)  In any prosecution for an attempt to commit a crime, it is a defense that, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant avoided the commission of the crime attempted by abandoning his criminal effort and, if the mere abandonment was insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof.

(2)  A renunciation is not "voluntary and complete" within the meaning of this subsection if it is motivated in whole or part by:

(i)  a belief that circumstances exist which increase the probability of detection or apprehension of the defendant or another participant in the criminal

> enterprise, or which render more difficult the accomplishment of the criminal purpose; or
>
> \* \* \*

18 Pa.C.S.A. § 901(a), (c).

Additionally, the Crimes Code defines the offense of receiving stolen property as follows:

> **§ 3925.  Receiving stolen property**
>
> **(a)  Offense defined.**—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.
>
> **(b)  Definition.**—As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

18 Pa.C.S.A. § 3925.  To sustain a conviction for receiving stolen property, the Commonwealth must prove the defendant: (1) intentionally acquired possession of movable property of another; (2) with knowledge or belief it was probably stolen; and (3) with the intent to permanently deprive the owner of his property. ***Commonwealth v. Robinson***, 128 A.3d 261, 265 (Pa.Super. 2015) (*en banc*).  A "guilty knowledge" inference arises from the unexplained possession of recently stolen goods. *Id.* at 267.  Recency of theft, however, is not the only evidence that can support an inference of guilty knowledge. *Id.* at 268.  "Circumstantial evidence of guilty knowledge may include, *inter alia*, the place or manner of possession, alterations to the property indicative

of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime." *Id.* Nevertheless, absent any other circumstantial evidence of guilty knowledge, mere possession of the property at issue alone is insufficient to sustain a conviction for receiving stolen property. *Id.* at 269.

Instantly, Mr. Hollenbach testified he and Appellant agreed in September 2014 to steal DVDs from Target and sell them as used DVDs. He stated he drove to Target in his black Volvo with Appellant several times that month. Mr. Hollenbach explained each time, he and Appellant entered the store, placed several DVDs in a backpack they had taken from inside the store, left Target without paying, and sold the DVDs as used to FYE. Mr. Hollenbach also identified his signature on several receipts from FYE, indicating FYE had paid him in exchange for DVDs. Mr. Hollenbach said he and Appellant together used the proceeds from the sales to FYE to buy heroin. He also testified he and Appellant entered the Target on September 30, 2014, again to steal DVDs, when police arrested him. Mr. Hollenbach said he saw Appellant leave the Target and run through the parking lot after the arrest.

Mr. Martinez-Colon also testified he went to Target with Appellant and Mr. Hollenbach in a black Volvo several times in September 2014. Mr.

Martinez-Colon said the trio agreed to carry out Appellant's plan to steal and resell DVDs for money to buy heroin. He said on the occasions he accompanied Mr. Hollenbach and Appellant to Target, he and/or the other two men placed DVDs into a backpack from the store and exited without paying for any items. Mr. Martinez-Colon also said he sold stolen DVDs to FYE several times and identified his signature on receipts from FYE, which showed FYE paid him for DVDs.

Mr. Schlopy, a Target asset protection employee, testified he investigated the thefts in September 2014. He said during each incident, the perpetrators removed a backpack from the sales floor, placed DVDs inside it, left the store without paying for those items, and returned to a black sedan. Mr. Schlopy explained when he recognized Mr. Hollenbach and Appellant as they entered Target on September 30, 2014, he called Chief McKibben, and followed the men through the store. He watched the duo take DVDs from the shelf and place them into bags. Mr. Schlopy stated he saw Chief McKibben arrest Mr. Hollenbach at the Target that day. He also explained Mr. Hollenbach's arrest was within Appellant's line of sight. Mr. Schlopy testified he saw Appellant run across the parking lot after police arrested his cohort. He said later that day, he found Appellant's photo ID and Social Security card in the store. Mr. Schlopy noted the total retail value of the items Appellant removed from Target exceeded $2,000.00. Mr. Schlopy also testified he investigated an anomalous theft that occurred on September 24, 2014, during

which Appellant removed from the Target a Garmin accessory with a retail value of $249.99.

Finally, Chief McKibben testified he investigated the September 2014 thefts from Target with Mr. Schlopy. Chief McKibben reviewed surveillance video and transactions receipts from FYE. He said Appellant removed from Target merchandise with a cumulative retail value of $2,235.91.

The evidence demonstrated Appellant entered into an agreement with two individuals to steal DVDs from Target and resell them for money to buy heroin. The testimony of Mr. Hollenbach, Mr. Martinez-Colon, and Mr. Schlopy showed Appellant and/or his cohorts executed their plan several times in September 2014. Mr. Hollenbach's and Mr. Schlopy's testimony demonstrated Appellant entered the Target on September 30, 2014, collected DVDs from the sales floor, but did not leave the store with any merchandise after police arrested Mr. Hollenbach that day. Consequently, the Commonwealth established each element of the offenses at issue. *See* 18 Pa.C.S.A. §§ 3929(a)(1), 903(a), 901(a), and 3925(a). To the extent Appellant complains the evidence supported a renunciation defense to the attempt to commit retail theft charge, the testimony of Mr. Hollenbach and Mr. Schlopy show Appellant fled the Target on September 30, 2014, only after police arrested Mr. Hollenbach. Further, Mr. Schlopy testified Mr. Hollenbach's arrest was within Appellant's line of sight. Thus, Appellant's act of abandoning the DVDs on September 30, 2014, did not constitute renunciation. *See* 18 Pa.C.S.A. §

901(c)(2)(i). Based upon the foregoing, the evidence supported Appellant's convictions. *See Jones, supra*. Following our independent review of the record, we conclude the appeal is frivolous. *See Palm, supra*. Accordingly, we affirm the judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed; petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/2018